Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242
(214) 767-8967
Meredyth A. Kippes
for the United States Trustee
meredyth.kippes@usdoj.gov

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 24-80093-mvl11 |
| | § | |
| CAREMAX INC., et al., | § | (Jointly Administered) |
| | § | |
| *Debtor*. | § | Chapter 11 |
| | § | |

**United States Trustee's Objection to Debtors' Emergency Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to (I) Obtain Postpetition Financing, (II) Use Cash Collateral, (III) Grant Senior Secured Liens and Provide Claims with Superpriority Administrative Expense Status, and (IV) Grant Adequate Protection to the Prepetition Secured Parties, (B) Modifying the Automatic Stay, (C) Scheduling a Final Hearing, and (D) Granting Related Relief**
[related to docket no. 6]

TO THE HONORABLE MICHELLE V. LARSON,
UNITED STATES BANKRUPTCY JUDGE:

Lisa L. Lambert, the United States Trustee for Region 6 ("**United States Trustee**"), objects to the Debtors' Emergency Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to (I) Obtain Postpetition Financing, (II) Use Cash Collateral, (III) Grant Senior Secured Liens and Provide Claims with Superpriority Administrative Expense Status, and (IV) Grant Adequate Protection to the Prepetition Secured Parties, (B) Modifying the Automatic Stay, (C) Scheduling a Final Hearing, and (D) Granting Related Relief ("**DIP Motion**"). [docket no. 6]. The United States Trustee would respectfully show:

## Overview

Debtors seek entry of a final order providing both for 1) the use of cash collateral that is subject to liens held by pre-petition secured lender and agent and proposed DIP lender and collateral agent, Acquiom Agency Services LLC, ("**DIP Lender**") and 2) approval of $122.0 million DIP facility ("Final Roll-Up DIP), consisting of $30.5 million in New Money DIP Loans and $91.5 million roll-up in prepetition debt ("**Roll-Up**"). The United States Trustee objects for the following reasons:

a. Final Roll-Up DIP is improper because it rolls $91.5 million of the DIP Lenders' prepetition debt, yet the Motion is silent as to whether this 3:1 roll-up conforms to industry standards for bankruptcy court approval.

b. The Final Roll-Up DIP grants the DIP Lender liens over the proceeds of any Chapter 5 causes of action as a last look.

c. The Final Roll-Up DIP waives the Debtors' right to surcharge collateral under 11 U.S.C. § 506(c).

d. The Final Roll-Up DIP enjoins third parties from enforcing any marshaling provisions against the DIP Lender.

## Background

1. On November 17, 2024 ("**Petition Date**"), CareMax, Inc., along with its subsidiaries (collectively, "**Debtors**"), filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the Northern District of Texas.

2. On November 19, 2024, the Court entered an order granting joint administration of all Debtors' cases under case no. 24-80093. [docket no. 67].

3. The Debtors' proposed chief restructuring officer is Paul Rundell ("**CRO**" or "**Mr.**

Rundell").

4. The DIP Motion is supported by the declaration of Bilal Bazzy, of Piper Sandler & Co. (the "Bazzy Declaration") [docket no. 7].

5. On December 4, 2024, the United States Trustee appointed the official committee of unsecured creditors ("**Committee**"). [docket no. 154].

6. The Debtors' section 341 meeting of creditors is currently scheduled for December 18, 2024.

7. The Debtors' schedules or statements of financial affairs were filed on November 27 and 28, 2024.

**Prepetition Secured Debt and Proposed DIP Loans**

8. As of the Petition Date, the Debtors owed approximately $422.6 million in prepetition funded debt under its prepetition credit agreement ("**Prepetition Secured Debt**") to the DIP Lender. *Bazzy Declaration* at ¶ 17.

9. The Debtors through the Final Order seek approval of a final DIP loan approval of $122.0 million DIP facility, consisting of $30.5 million in New Money DIP Loans and approximately $91.5 million roll-up in prepetition debt.

10. Three of the Debtors are not obligors on the prepetition loan facility (the "Non-Prepetition Obligors":

    a. Sapphire Holdings, LLC;

    b. RX Marine Inc.; and

    c. CareMax Medical Centers of Louisiana, LLC.

11. Sapphire Holdings, LLC's Schedule A/B (Case No. 24-80144-mvl11, docket no. 12) reflects interests of an undetermined value in twenty-two insurance policies, four of which are

director and officer liability policies. Sapphire Holdings, LLC's Schedule E/F reflects no unsecured claims.

12. RX Marine, Inc.'s Schedule A/B (Case No. 24-80145-mvl11, docket no. 12) reflects $96,916.05 in a J.P. Morgan Chase Disbursement Account and interests of an undetermined value in the same twenty-two insurance policies in which Sapphire Holdings, LLC asserts an interest. RX Marine, Inc.'s Schedule E/F reflects no unsecured claims.

13. CareMax Medical Centers of Louisiana, LLC's Schedule A/B (Case No. 24-80139-mvl11, docket no. 12) reflects interests of an undetermined value in the same twenty-two insurance policies in which Sapphire Holdings, LLC and RX Marine, Inc. asserts an interest.

14. The Court conducted an initial hearing on the Motion on November 19, 2024.

15. That same day, on November 19, 2024, Court entered the *Interim Order (A) Authorizing the Debtors to (I) Obtain Postpetition Financing, (II) Use Cash Collateral, (III) Grant Senior Secured Liens and Provide Claims with Superpriority Administrative Expense Status, and (IV) Grant Adequate Protection to the Prepetition Secured Parties, (B) Modifying the Automatic Stay, (C) Scheduling a Final Hearing and (D) Granting Related Relief* ("**Interim Order**"). [docket no. 71].

16. The Interim Order authorized the Debtors to borrow up to $12 million in new money. Interim Order at p. 2.

17. On a final basis, the Debtors seek authorization to borrow up to an additional $18.5 million of new money and to roll up $91.5 million of prepetition secured debt. Interim Order at p. 2.

18. The DIP Motion and Bazzy Declaration are both silent as to whether the proposed Final DIP Loan's 3:1 roll-up is comparable to market rates for other roll-up DIP loans approved by this Court.

**Objection**

**The Final Roll-Up DIP is inappropriate.**

19. The Final Roll-Up DIP would convert $91.5 million in prepetition secured debt into a post-petition claim with superpriority administrative expense status, and secured by all assets of the Debtors' estates. Interim Order at pp. 24-25.

20. Roll-up provisions "have the effect of improving the priority of a prepetition creditor." *Official Committee of Unsecured Creditors of New World Pasta Co. v. New World Pasta Co.*, 322 B.R. 560, 569 n.4 (M.D. Pa. 2005). The Final Roll-Up DIP inappropriately improves the DIP Lender's position by granting a superpriority claim of pre-petition debt over post-petition debt, including over previously unencumbered estate assets, including a "last look" on chapter 5 causes of action. Interim Order at pp. 34-35.

21. The Motion is silent as to how the roll-up of $91.5 million of the DIP Lender's prepetition debt benefits the Debtors' estates. The Debtors and the DIP Lender should be required to produce evidence as to what value is provided to the Debtors' estates by the 3:1 Final Roll-Up DIP, whether the Final Roll-Up DIP's terms are market for bankruptcy court approval, and why general unsecured creditors could be deprived of any potential recovery through the liens granted on the chapter 5 causes of action.

22. Further, the Debtors should put on evidence that encumbering the assets of the Non-Prepetition Obligors is not priming other creditors or encumbering assets that would otherwise be available to unsecured creditors.

**The Final Roll-Up DIP improperly grants to the lenders a lien against the proceeds of chapter 5 causes of action**

23. The Final Roll-Up DIP improperly provides the DIP Lender with additional liens on the proceeds of chapter 5 causes of action. While the Interim Order provides that the DIP Lender shall

seek recovery from such proceeds only as a last resort, the Court should not approve or authorize liens on the proceeds of chapter 5 causes of action. Chapter 5 avoidance actions are not the Debtors' property, but instead rights that are created by statute and which may be used for the benefit of creditors. *See In re Cybergenics Corp.*, 226 F.3d 237, 243-45 (3d Cir. 2000) (state law fraudulent transfer claim is not an asset of the debtor).

24. Typically, these avoidance actions are a source of recovery for general unsecured creditors in chapter 11 cases. In the present case, it appears that the unsecured creditors are underwater such that chapter 5 causes of action may be their own source of significant recovery. At a minimum, the Debtors should be required to produce evidence as to their analysis of potential avoidance actions and why they should not be carved out for the benefit of general unsecured creditors.

**The DIP Motion improperly seeks to waive parties' right to surcharge collateral.**

25. The United States Trustee objects to any provisions waiving the Debtors' or a successor trustee's right to surcharge collateral under 11 U.S.C. § 506(c). Under the final order, Debtors agree to waive their right to surcharge the collateral under 11 U.S.C. § 506(c). Interim Order at p. 42. Here, the DIP Lender is not unreasonably exposed to the surcharge of their collateral. Secured lenders are typically the primarily beneficiaries of a chapter 11 case. Furthermore, the party seeking recovery under § 506(c) bears the burden of demonstrating a direct benefit to the lender's collateral. *New Orleans Public Service, Inc. v. First Federal Savings and Loan Association of Warner Robins, Georgia (In re Delta Towers),* 924 F.2d 74, 76 ( 5th Cir. 1991). The parties should be required to demonstrate to the Court why the § 506(c) waiver is necessary given that the DIP Lender would not be prejudiced if this right were not waived. This is especially true here as the Debtors' have numerous landlord creditors with rejection damages. The Debtors should put on evidence to support this requested relief.

**The DIP Motion improperly constrains creditors from enforcing the equitable doctrine of marshaling.**

26. The Final Roll-Up DIP prevents any party from asserting the equitable doctrine of marshaling against the DIP Lender. Interim Order at pp. 43-44. The equitable doctrine of marshaling rests upon the principal that when a creditor has multiple sources of collateral with which to satisfy its debt, it may not, by its demand, defeat the claim of another creditor that has only one source of collateral with which to satisfy its debt. *Meyer v. United States*, 375 U.S. 233, 321 (1963) (in the context of whether the doctrine of marshaling should be applied to junior federal tax liens in the face of a state law that prohibited the application). In other words, where one creditor has a blanket lien on all assets and another creditor has a lien on only one piece of collateral, the equitable doctrine of marshaling would require the first creditor to look to other collateral before it looked to the more limited collateral of the second creditor. Accordingly, United States Trustee objects to waiver of the doctrine of marshaling to the extent it prevents other creditors from invoking the doctrine of marshaling, should cause arise.

## Conclusion

The United States Trustee respectfully requests that the Court sustain her objections. The United States Trustee requests any additional relief to which he may be entitled.

DATED: December 11, 2024                    Respectfully submitted,

                                                LISA L. LAMBERT
                                                UNITED STATES TRUSTEE
                                                */s/ Meredyth A. Kippes*
                                                Meredyth A. Kippes
                                                Trial Attorney
                                                Texas State Bar No. 24007882
                                                Office of the United States Trustee
                                                1100 Commerce Street, Room 976
                                                Dallas, Texas  75242
                                                (214) 767-1079
                                                meredyth.kippes@usdoj.gov

# Certificate of Service

      The undersigned counsel certifies that copies of the foregoing document were served on December 11, 2024 via ECF to those parties requesting service via ECF in this case and to the parties listed below via electronic mail.

                                                                /s/ Meredyth A. Kippes
                                                                Meredyth A. Kippes

CareMax, Inc.
1000 NW 57 Court, Suite 400
Miami, Florida 33126
Attn: Paul Rundell, Chief Restructuring Officer
prundell@alvarezandmarsal.com

SIDLEY AUSTIN LLP
Thomas R. Califano (24122825)
Juliana L. Hoffman (24106103)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
tom.califano@sidley.com
jhoffman@sidley.com

SIDLEY AUSTIN LLP
Stephen E. Hessler
Anthony R. Grossi
Jason L. Hufendick
787 Seventh Avenue
New York, New York 10019
shessler@sidley.com
agrossi@sidley.com
jhufendick@sidley.com

Boris I. Mankovetskiy
Sill Cummis & Gross P.C.
The Legal Center, One Riverfront Plaza
Newark, NJ 07102
bmankovetskiy@sillscummis.com

Robert J. Feinstein
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, NY 10017
rfeinstein@pszjlaw.com

Bradford J. Sandler
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, NY 10017
bsandler@pszjlaw.com

Michael D. Warner
Pachulski Stang Ziehl & Jones LLP
735 Plaza Blvd., Suite 200
Coppell, TX 75019

Michael D. Warner
Pachulski Stang Ziehl & Jones LLP
700 Louisiana Street, Suite 4500
Houston, TX 77002
mwarner@pszjlaw.com