Rachael L. Smiley
Texas Bar No. 24066158
**Ferguson Braswell Fraser Kubasta PC**
2500 Dallas Parkway, Suite 600
Plano, TX 75093
Telephone: (972) 378-9111
Facsimile: (972) 378-9115
Email:     rsmiley@fbfk.law

-and-

Nicole M. Lapenta (*pro hac vice* forthcoming)
Eric S. Goldstein
**Shipman & Goodwin LLP**
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: (860) 251-5059
Facsimile:  (860) 251-5218
Email:     nlapenta@goodwin.com
           egoldstein@goodwin.com

*Counsel to Preferred Care Network, Inc., and
Preferred Care Partners, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CAREMAX, INC., *et al.*, | Case No. 24-80093 (MVL) |
| Debtors.[1] | (Jointly Administered) |
| | Re: Docket No. 21 |

**LIMITED OBJECTION TO DEBTORS' MOTION
FOR ENTRY OF AN ORDER (I)(A) APPROVING BIDDING PROCEDURES;**

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/CareMax. The Debtors' mailing address is 1000 NW 57 Court, Suite 400, Miami, Florida 33126.

1

**(B) APPROVING THE SELECTION OF THE STALKING HORSE BIDDER; (C) APPROVING THE DEBTORS' ENTRY INTO THE STALKING HORSE AGREEMENT; (D) SCHEDULING AN AUCTION AND COMBINED HEARING; (E) APPROVING THE FORM AND MANNER OF NOTICES RELATING TO THE CORE CENTERS SALE TRANSACTION; AND (F) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES; AND (II) GRANTING RELATED RELIEF**

Preferred Care Network, Inc. ("PCN") and Preferred Care Partners, Inc. ("PCP" and together with PCN, "Preferred Care"), hereby submit this Limited Objection (the "Objection") to the *Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures; (B) Approving the Selection of the Stalking Horse Bidder; (C) Approving the Debtors' Entry Into the Stalking Horse Agreement; (D) Scheduling an Auction and Combined Hearing; (E) Approving the Form and Manner of Notices Relating to the Core Centers Sale Transaction; and (F) Approving Assumption and Assignment Procedures; and (II) Granting Related Relief* dated November 17, 2024 [Docket No. 21] (the "Bid Procedures Motion") filed by CareMax, Inc. and its affiliated debtors (the "Debtors").

Preferred Care hereby objects to the Bid Procedures Motion because the assumption and assignment procedures appear to violate state and federal law requiring advance notice to members if providers will be going out of network. This issue can be remedied if Preferred Care is given 60 days' notice prior to the Closing Date[2] of the Core Centers Sale Transaction if their contracts will be assumed and assigned. Preferred Care's counsel has been in touch with Debtors' counsel to discuss this issue and hopes to reach a resolution of this concern in advance of the hearing on the Bid Procedures Motion.

In support of its Objection, Preferred Care states as follows:

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Bid Procedures Motion.

I. **BACKGROUND**

A. **The Preferred Care Risk Agreements**

1. Both Preferred Care entities have Certificates of Authority from the Florida Office of Insurance Regulation and have entered into a Medicare Advantage contract (the "Medicare Advantage Contract") with the Centers for Medicare & Medicaid Services ("CMS"). Under the Medicare Advantage Contract, Preferred Care provides medical insurance to Medicare members enrolled in its Medicare Advantage plans ("MA Plans").

2. InterAmerican Medical Center Group, L.L.C. ("InterAmerican" or "Debtor") is a provider network that engages physicians, physician groups, and ancillary providers to provide health care services to members of health maintenance organizations, preferred provider organizations, or other managed care companies with network contracts.

3. Preferred Care entered into two risk-based contracts prepetition with InterAmerican for the provision of health care services to certain of Preferred Care's members covered under MA Plans, as more particularly set forth below.

4. PCN and InterAmerican are parties to that certain Medicare Advantage Network Risk Agreement with an effective date as of December 1, 2013 (as amended, the "PCN – InterAmerican Agreement"), pursuant to which InterAmerican arranged for or otherwise provided covered health care services to PCN's members enrolled under MA Plans that are assigned to one of the Debtor's providers.[3] A copy of the PCN – InterAmerican Agreement is annexed hereto as **Exhibit A**.

---

[3] The original parties to the PCN – InterAmerican Agreement were InterAmerican and Medica Healthcare Plans, Inc. ("Medica"). Between 2013 and 2019, the parties entered into four amendments to modify the capitation fee in Schedule B and modify the STARS Bonus Program (as defined therein). On January 1, 2022, Medica changed its name to PCN. InterAmerican and PCN entered into one subsequent amendment with an effective date as of January 1, 2023 to replace the capitation fee payment appendix found in Schedule B.

5.     PCP and InterAmerican are parties to that certain Medicare Advantage Network Risk Agreement with an effective date as of December 1, 2013 (as amended, the "PCP – InterAmerican Agreement" and together with the PCN – InterAmerican Agreement, the "Risk Agreements"), pursuant to which InterAmerican arranged for or otherwise provided covered health care services to PCP's members enrolled under MA Plans that are assigned to one of the Debtor's providers. A copy of the PCP – InterAmerican Agreement is annexed hereto as **Exhibit B**.

6.     Under each Risk Agreement, a fund is created on a ledger basis, referred to as the Medicare Operating Fund (the "Operating Fund"), into which Preferred Care deposits a fixed percentage of the monthly capitation payments it receives from CMS for members under MA Plans along with certain other funds as described in the Risk Agreements. These Operating Funds are the source of payment for all covered services rendered to members that are assigned to the Debtor's providers under the Preferred Care MA Plans (and other plan-related expenses as described in the Risk Agreements).

7.     Generally speaking, if the costs of covered services of members in a particular month (referred to as a "Target Month") is less than the amount deposited into the Operating Fund, the Debtor is entitled to such surplus. On the other hand, if the cost of covered services of members is more than the amount deposited into the Operating Fund in such Target Month, the Debtor is liable to Preferred Care for such deficits. Further, the Operating Fund has a companion "Security Reserve Account" that is intended to cover any deficits in the Operating Fund. The Security Reserve Account is funded by the Operating Fund to the extent revenues are available and in the absence of such revenue, by the Debtor, as applicable.

B. **The Debtors' Bankruptcy Cases**

8. On November 17, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").

9. On that same day, the Debtors filed the Bid Procedures Motion. The Bid Procedures Motion provides a procedure for the assumption and assignment of Designated Contracts to the Successful Bidder (as defined therein). For example, the procedures provide for the Debtors to file a list of Assigned Contracts that may be Designated Contracts by December 18, 2024. (Bid Procedures Motion ¶ 32(b).) However, prior to the Combined Hearing, the Debtors may add or remove Designated Contracts from the Notice of Designated Contracts. (*Id*. ¶ 32(e).) Moreover, the Debtors or the Core Centers Purchaser reserve the right to remove an "Executory Contract" from the Schedule of Assumed Executory Contracts and Unexpired Leases up to 30 days following the Closing Date of the Core Centers Sale Transaction. (*Id*. ¶ 32(g).) In addition, if there is a Cure Dispute that is resolved or determined "unfavorably" to the Debtors, the Debtors may withdraw the proposed assumption of the applicable Assigned Contracts after such determination. (*Id*. ¶ 33.)

10. The Bid Procedures Motion also seeks to approve the Stalking Horse Bidder. On November 25, 2024, the Debtors filed their Notice of Designation of Stalking Horse Bidder. (Docket No. 132.) The Asset Purchase Agreement annexed thereto provides that the Successful Bidder will provide the seller 14 days prior to the confirmation hearing a schedule of contracts that it desires to have assumed and assigned. (Asset Purchase Agreement § 13.3(a).) Further, the

5

Successful Bidder can remove a selected contract from this list up to 30 days after plan confirmation. (*Id*. § 13.3(b).)

11. In sum, under the proposed contract assumption and assignment procedures, as well as the Stalking Horse Asset Purchase Agreement, Preferred Care may only have one day's notice of whether the Risk Agreements will be assumed and assigned. If the Risk Agreements are not assumed and assigned to the Successful Bidder, who will likely be employing the Debtors' providers, then the Preferred Care member will need to be assigned to a new primary care provider that is in network.

## II. LIMITED OBJECTION

12. Preferred Care hereby objects to the Bid Procedures Motion because the Motion's proposed assumption and assignment procedures for the sale process do not allow for adequate time for Preferred Care to provide mandatory notice to members under state and federal law before a health care provider goes out of network, which is what will occur if the Risk Agreements are not assumed and assigned to the Successful Bidder. Indeed, these regulations are intended to prevent prejudice to members under MA Plans caused by abruptly switching the provider managing their ongoing care.

13. CMS requires that Preferred Care, as a Medicare Advantage Organization, provide 45 days' notice before the termination effective date of a primary care provider in both writing and by telephone for all enrollees currently assigned to that primary care provider and to enrollees that have been a patient of that provider in the prior three years. 42 C.F.R. § 422.111(e)(1). This is applicable to MA Plans. *See* 42 C.F.R. § 422.2 (definition of "MA plan," and "MA organization").

14. In addition, Florida law mandates that contracts between providers (like the Debtors) and health maintenance organizations (like Preferred Care)[4] must require the provider to provide the health maintenance organization with at least 60 days' prior written notice of the termination of the provider contract. Fla. Stat. Ann. § 641.315 ("The contracts must require the provider to give 60 days' advance written notice to the health maintenance organization and the office before canceling the contract with the health maintenance organization for any reason").

15. Consistent with this requirement, the Risk Agreements require that the Debtor provide at least 120 days' notice of termination without cause of such agreement. (*See, e.g.*, PCN – InterAmerican Agreement § 9.4.) This allows for Preferred Care to carry out its notice obligations and avoid prejudice to its MA Plan members.

16. These laws and regulations seek to avoid undue prejudice to individuals that are presently receiving care from the Debtor or planning to receive care from the Debtors because it is "in network" with Preferred Care. *See* 42 C.F.R. § 422.111(e). If the Debtor is suddenly out of network, Preferred Care's members may suffer significant financial harm by being subject to a significantly higher cost-share (such as co-pays and deductibles) for medical treatment and procedures. It could also lead to negative health outcomes if Preferred Care's members are forced to defer treatment on short notice while attempting to identify an alternate, "in network" provider.

17. Here, the Debtors have not yet indicated whether either of Preferred Care's Risk Agreements will be assumed and assigned to the Successful Bidder. While understanding that the Successful Bidder has discretion in choosing the Designated Contracts that are selected for

---

[4] Under Florida law, a "health maintenance organization" means, *inter alia,* any organization which "[p]rovides through arrangements with other persons, emergency care, inpatient hospital services, physician care . . . ambulatory diagnostic treatment, and preventive health care services" or "[p]rovides, either directly or through arrangements with other persons, health care services to persons enrolled with such organization, on a pre-paid per capita or prepaid aggregate fixed-sum basis." Fla. Stat. Ann. § 641.19(12).

assumption and assignment, Preferred Care simply requests that this process be done in a way that comports with state and federal regulations and avoids (or at least minimizes) prejudice to MA Plan members. This can be accomplished by providing Preferred Care with notice of the Successful Bidders' decision on whether to include the Risk Agreements in the list of Designated Contracts at least 60 days prior to the Closing Date of the Core Centers Sale Transaction. This period will allow Preferred Care to attempt to comply with the requisite 45-day notice period required by 42 C.F.R. § 422.111(e)(1) and the 60-day notice period required by Florida Statutes § 641.315, to the greatest extent possible, while balancing that need with the Successful Bidder's discretion and the exigencies of the contemplated transaction.

### III. RESERVATION OF RIGHTS

18. For all the reasons set forth herein, Preferred Care hereby reserves its rights to supplement this Objection or make such other and further objections as may be appropriate, including upon Debtors' filing of a revised Bid Procedures Motion containing amended procedures for the assumption and assignment of Designated Contracts to the Successful Bidder.

### IV. CONCLUSION

WHEREFORE, Preferred Care respectfully requests that the Court enter an order requiring the Debtors and Successful Bidder to give Preferred Care 60 days' notice prior to the Closing Date of the Core Centers Sale Transaction, and granting such further relief as the Court deems appropriate.

*[Signatures on following page.]*

Dated December 11, 2024.          By: */s/ Rachael L. Smiley*
Rachael L. Smiley
Texas Bar No. 24066158
**FERGUSON BRASWELL FRASER KUBASTA PC**
2500 Dallas Parkway, Suite 600
Plano, TX 75093
Telephone: (972) 378-9111
Facsimile: (972) 378-9115
Email: rsmiley@fbfk.law

- and -

Nicole M. Lapenta (*pro hac vice* forthcoming)
Eric S. Goldstein
**SHIPMAN & GOODWIN LLP**
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: (860) 251-5059
Facsimile: (860) 251-5218
Email: nlapenta@goodwin.com
egoldstein@goodwin.com

*Counsel to Preferred Care Network, Inc., and Preferred Care Partners, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2024, a copy of foregoing was served on all parties requesting notice via the Court's CM/ECF filing system.  In addition, a copy of the foregoing was served via electronic mail on the parties listed on the Complex Service List as of December 9, 2024 [Docket No. 167], including proposed counsel for the Debtors.

/s/ *Rachael L. Smiley*
Rachael L. Smiley