CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 31, 2025**

_Michelle V. Larson_
_____
**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

In re:

CAREMAX, INC., *et al.*[1]

        Debtors.

Chapter 11

Case No. 24-80093 (MVL)

(Jointly Administered)

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DEBTORS' DISCLOSURE STATEMENT ON A FINAL BASIS; AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF CAREMAX, INC. AND ITS DEBTOR AFFILIATES

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/CareMax. The Debtors' mailing address is 1000 NW 57 Court, Suite 400, Miami, Florida 33126.

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") having:[2]

a.  commenced, on November 17, 2024 (the "Petition Date"), these chapter 11 cases (these "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court");

b.  continued to operate their businesses and manage their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.  filed, on the Petition Date, the:

    i.   *Declaration of Paul Rundell in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 15];

    ii.  *Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures; (B) Approving the Selection of the Stalking Horse Bidder; (C) Approving the Debtors' Entry Into the Stalking Horse Agreement; (D) Scheduling an Auction and Combined Hearing; (E) Approving the Form and Manner of Notices Relating to the Core Centers Sale Transaction; and (F) Approving Assumption and Assignment Procedures; and (II) Granting Related Relief* [Docket No. 21] (the "Bidding Procedures Motion"); and

    iii. *Debtors' Motion for Entry of an Order (I) Authorizing and Approving (A) Assumption of and Performance of Obligations Under the ACO TSA, and (B) the ACO Break-Up Fee; and (II) Granting Related Relief* [Docket No. 23];

d.  filed, on the Petition Date, the:

    i.   *Joint Chapter 11 Plan of CareMax, Inc. and its Debtor Affiliates* [Docket No. 18];

    ii.  *Disclosure Statement For Joint Chapter 11 Plan of CareMax, Inc. and its Debtor Affiliates* [Docket No. 19]; and

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Third Amended Joint Plan of CareMax, Inc., and its Debtor Affiliates*, attached hereto as **Exhibit A** (the "Third Amended Plan" and, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms thereof and this Order, including all exhibits and schedules thereto, the "Plan"), the *Disclosure Statement for the Amended Joint Plan of CareMax, Inc. and its Debtor* [Docket No. 585] (the "Disclosure Statement"), the Core Centers APA [Docket 132-2] or the Voting Report (as defined herein), as applicable. The rules of interpretation set forth in Section I.B of the Plan shall apply herein.

iii. *Debtors Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Conditionally Approving the Disclosure Statement; (III) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures; (IV) Approving the Solicitation Procedures; (V) Approving the Combined Notice and Patient Combined Notice; and (VI) Granting Related Relief* [Docket No. 20];

e. filed, on November 25, 2024, the *Notice of Designation of Stalking Horse Bidder* [Docket No. 132];

f. filed, on December 17, 2024, the:

i. *Amended Joint Chapter 11 Plan of CareMax, Inc. and its Debtor Affiliates* [Docket No. 227-1];

ii. *Disclosure Statement For the Amended Joint Chapter 11 Plan of CareMax, Inc. and its Debtor Affiliates* [Docket No. 228-1]; and

iii. *Notice of Filing of Revised Solicitation Order* [Docket No. 226];

g. filed, on December 19, 2024, the:

i. *Notice of Filing of Solicitation Version of the Amended Joint Chapter 11 Plan of CareMax, Inc. and Its Debtor Affiliates* [Docket No. 254]; and

ii. *Notice of Filing of Solicitation Version of Disclosure Statement for the Amended Joint Chapter 11 Plan of CareMax, Inc. and Its Debtor Affiliates* [Docket No. 256];

h. obtained, on December 19, 2024, the:

i. *Order (I)(A) Approving Bidding Procedures; (B) Approving the Selection of the* Stalking *Horse Bidder; (C) Approving the Debtors' Entry into the Stalking Horse Agreement; (D) Scheduling an Auction and Combined Hearing; (E) Approving the Form and Manner of Notices Relating to the Core Centers Sale Transaction; and (F) Approving Assumption and Assignment Procedures; and (II) Granting Related Relief* [Docket No. 249]; and

ii. *Order (I) Authorizing and Approving (A) Assumption of and Performance of Obligations under the ACO TSA, and (B) the ACO Break-Up Fee; and (II) Granting Related Relief* [Docket No. 250];

i. obtained, on December 20, 2024, the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Conditionally Approving the Disclosure Statement; (III) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures; (IV) Approving the Solicitation*

*Procedures; (V) Approving the Combined Notice and Patient Combined Notice; and (IV) Granting Related Relief* [Docket No. 270] (the "Disclosure Statement Order"), conditionally approving the Disclosure Statement, and approving the solicitation procedures and the tabulation rules set forth in the Disclosure Statement Order (collectively, the "Solicitation Procedures") and related notices, forms, and ballots (collectively, the "Solicitation Packages");

j.     caused, on or about December 20, 2024, the Solicitation Packages, plus the notice of the combined hearing for confirmation of the Plan ("Confirmation"), the notice to patients of the bar date and combined hearing ("Patient Notice"), and approval of the Disclosure Statement (the "Combined Hearing Notice") to be distributed in accordance with the terms of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Bankruptcy Local Rules for the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Local Rules"), the Disclosure Statement Order, and the Solicitation Procedures, *see Certificate of Service* [Docket No. 389];

k.     caused, on or about December 20, 2024, the: (a) *Notice of Non-Voting Status to Holders of Unimpaired Claims Conclusively Deemed to Accept the Plan*; and (b) *Release Opt-Out Form* (together, the "Notice of Non-Voting Status and Release Opt- Out Forms" and, together with the Combined Hearing Notice, the "Notices") to be served on all Holders of Claims or potential Claims in the non-voting classes, which informed recipients of (i) their status as Holders or potential Holders of Claims in non- voting classes, (ii) provided the full text of the releases, exculpation, and injunction provisions set forth in the Plan, (iii) included a form by which Holders could elect to opt out of the Third Party Release (as defined below) included in the Plan by checking a prominently featured and clearly labeled box, (iv) where applicable, provided information on how certain Holders could opt out electronically, (v) provided the deadline for release opt outs, and (vi) enclosed a postage prepaid, return-addressed envelope in which Holders could return their opt out election to the Notice and Solicitation Agent, *see Certificate of Service* [Docket No. 389];

l.     published the Combined Hearing Notice in *Miami Herald* and *The New York Times* (National Edition) on December 24, 2024, as evidenced by the *Certificate of Publication for the Notice of (I) Hearing on the Disclosure Statement and Confirmation of the Joint Chapter 11 Plan, (II) Deadline to Cast Votes to Accept or Reject the Chapter 11 Plan, and (III) Notice of Objection and Opt Out Rights in the Miami Herald* [Docket No. 350] and *Certificate of Publication for the Notice of (I) Hearing on the Disclosure Statement and Confirmation of the Joint Chapter 11 Plan, (II) Deadline to Cast Votes to Accept or Reject the Chapter 11 Plan, and (III) Notice of Objection and Opt Out Rights in The New York Times* [Docket No. 351] (the "Publication Affidavits");

m.     filed, on January 9, 2025, the *Certificate of Service* [Docket No. 389], certifying the service of the Solicitation Packages (together with all the exhibits thereto) (the "First Solicitation Packages Affidavit");

n.   determined, on January 14, 2025, that no competing bids were submitted for the Core Centers Assets set forth in the Stalking Horse Bid and that ClareMedica Viking, LLC and ClareMedica Parent Holdings, LP (collectively, the "Core Centers Purchaser") submitted the highest or otherwise best bid for those certain Core Centers Assets set forth in the Stalking Horse APA, and filed the *Notice of Cancellation of Auction and Designation of Successful Bidder* [Docket No. 410];

o.   determined, on January 17, 2025, that (i) no competing bids were submitted for the CareMed Pharmacy Assets set forth in the CareMed Pharmacy Sale Documents (the "CareMed Pharmacy Assets") and that Scripts HoldCo, LLC (together with its permitted successors, assigns, or designees, as applicable the "CareMed Pharmacy Purchaser") submitted the highest or otherwise best bid for the CareMed Pharmacy Assets; and (ii) that no competing bids were submitted for the Core Centers Assets set forth in the Clear Scripts Sale Documents (the "Clear Scripts Assets") and that Mr. Leonardo Sigler (together with his permitted successor, assigns, or designees, as applicable, the "Clear Scripts Purchaser") submitted the highest or otherwise best bid for the Clear Scripts Assets; and filed the *Notice of Designation of Successful Bidders for Certain of the Core Centers Assets* [Docket No. 419];

p.   filed, on January 17, 2025, the *Notice of Filing of Plan Supplement* [Docket No. 422] (the "Plan Supplement");

q.   filed, on January 22, 2025, the *Notice of Filing of Amended Plan Supplement* [Docket No. 442] (the "First Amended Plan Supplement");

r.   determined, on January 24, 2025, that (i) no competing bids were submitted for the Core Centers Assets set forth in the Care Optical Sale Documents (the "Care Optical Assets") and that Mr. Yonel Serrano Guzman (together with its permitted successors, assigns, or designees, as applicable the "Care Optical Purchaser") submitted the highest or otherwise best bid for the Care Optical Assets; and filed the *Notice of Designation of Successful Bidders for Certain of the Core Centers Assets* [Docket No. 470];

s.   filed, on January 24, 2025, *Notice of Filing of Second Amended Plan Supplement* [Docket No. 473] (the "Second Amended Plan Supplement");

t.   filed, on January 25, 2025, the:

   i.   *Second Amended Joint Chapter 11 Plan of CareMax, Inc. and its Debtor Affiliates* [Docket No. 480];

   ii.   *Debtors' Memorandum of Law in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of CareMax, Inc. and its Debtor Affiliates*, [Docket No. 482] (the "Confirmation Brief");

   iii.   *Declaration of Paul Rundell, Chief Restructuring Officer, in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of CareMax, Inc. and its Debtor Affiliates* [Docket No. 477] (the "Rundell Declaration");

iv. *Declaration of Brian Karpuk of Stretto, Inc. Regarding the Solicitation of Votes and Tabulation of Ballots on the Amended Joint Chapter 11 Plan of CareMax, Inc. and its Debtor Affiliates* [Docket No. 476] (the "<u>Voting Report</u>"), which accounts for ballots received up to the Voting Deadline (as defined below);

v. the *Declaration of Edward Borkowski in Support of the Second Amended Joint Chapter 11 Plan of CareMax, Inc. and Its Debtor Affiliates* [Docket No. 479] (the "<u>Borkowski Declaration</u>");

vi. *Declaration of Dustin Mondell in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of CareMax, Inc. and Its Debtor Affiliates* [Docket No. 478] the ("<u>Pharmacy Sale Declarations</u>");

vii. *Declaration of Dustin Mondell in Support of the Debtors' Bidding Procedures Motion and Assumption Motion* [Docket No. 22] (the "<u>Initial Mondell Declaration</u>");

viii. the *Supplemental Declaration of Dustin Mondell in Support of the Debtors' Bidding Procedures Motion and Assumption Motion* [Docket No. 214] (the "<u>Supplemental Mondell Declaration</u>"); and

ix. the *Declaration of Ren Mullinix in Support of Core Centers Transactions* [Docket No. 443] (the "<u>Adequate Assurance Declaration</u>");

u. filed, on January 28, 2025, *Notice of Filing of Third Amended Plan Supplement* [Docket No. 560] (the "<u>Third Amended Plan Supplement</u>"); and

v. filed, on January 31, 2025, the *Third Amended Joint Chapter 11 Plan of CareMax, Inc. and its Debtor Affiliates* [Docket No. 586] and the *Disclosure Statement for the Amended Joint Chapter 11 Plan of CareMax, Inc. and Its Debtor Affiliates* [Docket No. 585].

And this Bankruptcy Court having:

a. entered the Disclosure Statement Order on December 20, 2024;

b. set January 24, 2025, at 4:00 p.m. (prevailing Central Time) as the deadline for Holders of Interests in Classes 2 and 3 to accept or reject the Plan (the "<u>Voting Deadline</u>");

c. set January 24, 2025, at 4:00 p.m. (prevailing Central Time) as the deadline to file and serve objections to the confirmation of the Plan and the adequacy of the Disclosure Statement (the "<u>Plan Objection Deadline</u>");

d. set January 28, 2025, at 9:30 a.m. (prevailing Central Time) as the date and time for the commencement of the Combined Hearing;

e.  reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Solicitation Packages Affidavit, the Declarations in Support, the Initial Confirmation Brief, the Supplemental Confirmation Brief, the Combined Hearing Notice, and all Filed pleadings, exhibits, statements, responses, and comments regarding approval of the Disclosure Statement and Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket in these Chapter 11 Cases;

f.  held the Combined Hearing on January 28, 2025 at 9:30 a.m. (prevailing Central Time);

g.  considered all oral representations, live testimony, written direct testimony, exhibits, documents, filings, and other evidence presented at the Combined Hearing;

h.  overruled any and all outstanding objections to approval of the Disclosure Statement, the Plan, Confirmation, and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated;

i.  taken judicial notice of all papers and pleadings filed in these Chapter 11 Cases, all evidence proffered or adduced in these Chapter 11 Cases, and all arguments made at hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases; and

j.  entered rulings on the record at the Combined Hearing.

NOW THEREFORE, the Bankruptcy Court having found that notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation and other evidence presented at the Combined Hearing and the record in these Chapter 11 Cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT**:

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      This Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  This Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

**C.      Eligibility for Relief.**

3.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of these Chapter 11 Cases.**

4.      On the Petition Date, each of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  In accordance with the *Order Directing Joint Administration of Related Chapter 11 Cases* [Docket No. 67], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b)

and Bankruptcy Local Rule 1015-1. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner.

**E.     Appointment of the Creditors' Committee**

5.     On December 4, 2024, the Office of the United States Trustee for the Northern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 154] (the "Unsecured Creditors Committee").

**F.     Burden of Proof—Confirmation of the Plan**

6.     The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements under sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard for Confirmation. In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**G.     Judicial Notice.**

7.     The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation of the Plan) the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

**H.     Notice.**

8.     As evidenced by the Solicitation Packages Affidavit and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the commencement of these Chapter 11

Cases, the Disclosure Statement, the Plan, the Plan Supplement, the Combined Hearing, and the opportunity to opt out of the Third Party Release (as defined below), together with all deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement and the Plan. Further, the Combined Hearing Notice was published in *The New York Times* (National Edition) and the *Miami Herald* on December 24, 2024, in compliance with Bankruptcy Rule 2002(l), as evidenced by the Publication Affidavits. Such notice was adequate and sufficient under the facts and circumstances of these Chapter 11 Cases in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 2002 and 3017, the Bankruptcy Local Rules, and the Disclosure Statement Order. No other or further notice is or shall be required.

**I.      Disclosure Statement.**

9.      The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein. The filing of the Disclosure Statement with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b).

**J.      Ballots.**

10.     Holders of Interests in Classes 2 and 3 are entitled to vote to accept or reject the Plan (the "Voting Class").

11.     The forms of ballot attached as Exhibits 5A and 5B to the Disclosure Statement Order (collectively, the "Ballots") that the Debtors used to solicit votes to accept or reject the Plan from Holders in the Voting Class adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for Holders in the Voting to vote to accept or reject the Plan.

**K.     Solicitation.**

12.     As described in the Voting Report, the solicitation of votes on the Plan complied with the Solicitation Procedures set forth in the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including the registration requirements under the Securities Act.

13.     As described in the Voting Report and the Solicitation Packages Affidavit, as applicable, the Solicitation Packages, including the Disclosure Statement (including the Plan and other exhibits thereto), the Solicitation Procedures, and the appropriate Ballot were transmitted and served, including to all Holders in the Voting Class, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Bankruptcy Local Rules, the Disclosure Statement Order, and any applicable nonbankruptcy law.  Transmission and service of the Solicitation Packages was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases.  No further notice is required.

14.     As set forth in the Voting Report and the Solicitation Packages Affidavit, the Solicitation Packages were distributed to the Holders in the Voting Class that held an Interest as of December 1, 2024 (the "Voting Record Date").  The establishment and notice of the Voting Record Date were reasonable and sufficient.

15.     The period during which the Debtors solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for each Holder in a Voting Class to make an informed decision to accept or reject the Plan.

16.     Classes 2 and 3 are Impaired under the Plan. Class 2 has voted to accept the Plan pursuant to section 1126(e) of the Bankruptcy Code. Class 3 has voted to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Classes 5, 6, and 7 are Impaired/Unimpaired under the Plan and are deemed to accept or reject the Plan pursuant to section 1126(f) and (g) of the Bankruptcy Code.  Nevertheless, because the Plan has not been accepted by Classes 3, 5, 6 and 7, the Debtors seek Confirmation under section 1129(b), solely with respect to Classes 3, 5, 6 and 7, rather than section 1129(a)(8) of the Bankruptcy Code.  Although section 1129(a)(8) has not been satisfied with respect to Classes 3, 5, 6 and 7, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to Classes 3, 5, 6 and 7 and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below. As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

17.     The Notices adequately summarized the material terms of the Plan, including classification and treatment of Claims and Interests and the Third Party Release.  Further, because an opt out form was included in both the Ballots and the Notices, every known stakeholder was provided with the means by which to opt out of the Third Party Release.

**L.      Voting.**

18.     As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement, and any applicable non-bankruptcy law.  Class 2 has voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.  Based on the foregoing, and as evidenced by the Voting Report, at least one Impaired Class of Claims (excluding the acceptance by any insiders of the Debtors) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

**M.  Plan Supplement.**

19.    On January 14, 2025, the Debtors filed the Plan Supplement with the Bankruptcy Court, which was amended on January 22, 2025, and further amended on January 24, 2025. The Plan Supplement (including as it may be subsequently modified, supplemented, or otherwise amended pursuant to its terms) complies with the Bankruptcy Code and the terms of the Plan, and the Debtors provided good and proper notice of the filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the facts and circumstances of these Chapter 11 Cases.  The notice parties and Holders of Claims and Interests were provided due, adequate, and sufficient notice of the Plan Supplement.  No other or further notice is or will be required with respect to the Plan Supplement.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  The Debtors shall have the right to alter, amend, update, or modify the Plan Supplement in accordance with the terms of the Plan.

**N.  Plan Modifications.**

20.    Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan, including those set forth in the Amended Plan filed on December 17, 2024, and any additional modifications to the Plan set forth in this Confirmation Order or in any Plan filed prior to the entry of this Confirmation Order (collectively, the "Plan Modifications") constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest under the Plan.  These Plan Modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and Solicitation Packages served pursuant to the Disclosure Statement Order, and notice of these Plan Modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.

21. In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Bankruptcy Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

**O. Objections Overruled.**

22. Any resolution or disposition of objections to approval of the Disclosure Statement, the Core Centers Sale Transaction, the ACO Sale Transaction, and/or Confirmation of the Plan that have not been withdrawn, waived, or settled are hereby **OVERRULED** and **DENIED** on the merits, with prejudice.

**P. Plan Complies with Bankruptcy Code Requirements—Section 1129(a)(1).**

23. The Plan complies with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 thereof. Additionally, the Plan and all Plan Modifications are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a).

**(a) Proper Classification—Sections 1122 and 1123.**

24. The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into seven (7) Classes. Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, Holders of Claims

or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

**(b)    Specified Unimpaired Classes—Section 1123(a)(2).**

25.    The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Class 1 (Other Secured Claims) (the "Unimpaired Classes") are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code.

26.    Additionally, Article II of the Plan specifies that Allowed Administrative Claims (including Professional Compensation Claims) and Allowed Priority Tax Claims will be paid in full (unless a Holder of such Claim consents to alternative treatment) in accordance with the terms of the Plan, although these Claims are not separately classified under the Plan.

27.    Holders of Claims in Class 1 are Unimpaired and conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan. Class 5 (Intercompany Interests) was Impaired/Unimpaired, deemed to accept or reject the Plan, and thus not entitled to vote. The Plan therefore satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

**(c)    Specified Treatment of Impaired Classes—Section 1123(a)(3).**

28.    The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies the following Classes (the "Impaired Classes") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes:

| Class | Designation |
|-------|-------------|
| 2 | First Lien Debt Claims |
| 3 | General Unsecured Claims |
| 6 | Section 510(b) Claims |
| 7 | Existing Equity Interests |

### (d) No Discrimination—Section 1123(a)(4).

29. The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

### (e) Adequate Means for Implementation—Section 1123(a)(5).

30. The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions in Article IV and elsewhere in the Plan provide in detail adequate and proper means for the Plan's implementation, including regarding: (a) the consummation of the Plan, including the wind-down and dissolution of the Debtors and the vesting of the assets in the Post-Effective Date Debtors, as applicable; (b) the consummation of the Sale Transactions, including the vesting of assets in (i) the ACO Purchaser, (ii) the Core Centers Purchaser, (iii) the CareMed Pharmacy Purchaser, (iv) the Care Optical Purchaser or (v) the Clear Scripts Purchaser, as applicable; (c) the sources of consideration for Plan distributions, including the Sale Transactions, Cash, and Retained Causes of Action; (d) the appointment of the Plan Administrator; (e) the authorization for the Debtors, the Plan Administrator, and/or the Post-Effective Date Debtors, as applicable, to take all actions contemplated under or necessary, advisable, or appropriate to implement or effectuate the Plan; including those actions necessary, advisable, or appropriate to effect the Sale Transactions; (f) the settlement and discharge of Claims and Interests as set forth in the Plan; (g) the good faith compromise and settlement of all claims or controversies; (h) the preservation and vesting of certain Retained Causes of Action in the Post-Effective Date Debtors;

(i) the treatment of Executory Contracts and Unexpired Leases; (j) the dissolution of the Debtors; (k) the effectuation and implementation of documents and further transactions; (l) the cancellation of existing securities and agreements; and (m) the authorization, approval, and entry of corporate actions under the Plan.

**(f)      Non-Voting Equity Securities—Section 1123(a)(6).**

31.      The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code. The Plan does not provide for the issuance of equity or other securities of the Debtors, including non-voting equity securities.

**(g)      Directors and Officers—Section 1123(a)(7).**

32.      The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Article VI D of the Plan, as of the Effective Date, the existing directors and officers of the Debtors shall be deemed to have resigned without any further action required.  From and after the Effective Date, the Plan Administrator shall be authorized to act on behalf of the Estates, as applicable, *provided* that the Plan Administrator shall have no duties other than as expressly set forth in the Plan, this Confirmation Order, or any agreement governing the Plan Administrator's duties and responsibilities, as applicable.  The appointment of the Plan Administrator is consistent with the interests of creditors and with public policy.

**(h)      Debtor Is Not an Individual—Section 1123(a)(8) and 1123(c).**

33.      The Debtors are not individuals.  Accordingly, the requirements of sections 1123(a)(8) and 1123(c) of the Bankruptcy Code are inapplicable.

**(i)      Impairment / Unimpairment of Classes—Section 1123(b)(1).**

34.      The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.  Article III of the Plan leaves each Class of Claims or Interests Impaired or Unimpaired.

**(j)    Treatment of Executory Contracts and Unexpired Leases—Section 1123(b)(2).**

35.    The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  Article VII of the Plan provides for the automatic rejection of the Debtors' Executory Contracts and Unexpired Leases (other than the Indemnification Obligations and the D&O Liability Insurance Policies) not previously rejected, assumed, or assumed and assigned during these Chapter 11 Cases under section 365 of the Bankruptcy Code, nor scheduled to be assumed under the Plan, the Plan Supplement, or the Sale Orders.

36.    The Debtors' determinations regarding the assumption and rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims, and other parties in interest in these Chapter 11 Cases. The Debtors have demonstrated adequate assurance of future performance of the Executory Contracts and Unexpired Leases within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

37.    The amounts set forth in the Plan Supplement (the "Cure Amounts") are the sole amounts necessary to be paid upon assumption of the associated Executory Contracts and Unexpired Leases under section 365(b)(1)(A) and (B) of the Bankruptcy Code, and the payment of such amounts will effect a cure of all defaults existing under such Executory Contracts and Unexpired Leases and compensate the counterparties to such Executory Contracts and Unexpired Leases for any actual pecuniary loss resulting from all defaults existing under such Executory Contracts and Unexpired Leases as of the Effective Date; *provided* that the Cure Amount for any Executory Contract or Unexpired Lease with an unresolved pending objection shall be determined by settlement, by adjudication by the Bankruptcy Court, or as otherwise set forth in the Plan.

38. The objections of counterparties to the assumption of their Executory Contracts and Unexpired Leases, to the extent that such objection was timely raised in accordance with the Plan or the Bid Procedures or with the consent of the Debtors, as applicable, are preserved and will be considered by the Court at a date and time to be scheduled, and the rights of the Debtors, the Plan Administrator to at any time, and the rights of the ACO Purchaser, the Core Centers Purchaser, the CareMed Pharmacy Purchaser, the Care Optical Purchaser, and the Clear Scripts Purchaser in accordance with the terms of the ACO SPA, the Core Centers APA, the CareMed Pharmacy Sale Documents, the Care Optical Sales Documents, and the Clear Scripts Sale Documents, as applicable, to move to reject any Executory Contract or Unexpired Lease based upon the existence of any unresolved dispute are reserved and preserved.

**(k)    Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).**

39. In accordance with section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan. In addition, the compromises and settlements embodied in the Plan preserve value by enabling the Debtors to avoid extended, value-eroding litigation that could delay the Debtors' emergence from chapter 11, and the compromises and settlements in the Plan are fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

40. **Debtor Releases.** The release of Claims and Causes of Action by the Debtors, as described in Article IX.A of the Plan in accordance with section 1123(b) of the Bankruptcy Code (the "<u>Debtor Releases</u>"), represents a valid exercise of the Debtors' business judgment. The Debtor

Releases are integral to the Plan and are fair, reasonable, and in the best interests of the Debtors, the Estates and Holders of Claims or Interests. Also, the Debtor Releases are: (a) reflective of the significant contributions the Released Parties made to a highly complex and contentious restructuring, including the negotiation, formulation, and the effectuation of the Sale Transactions and transactions contemplated in the Plan; (b) given, and made, after due notice and opportunity for a hearing; and (d) a bar to the Debtors asserting a Claim or Cause of Action released by Article IX.A of the Plan. The scope of the Debtor Releases is appropriately tailored under the facts and circumstances of these Chapter 11 Cases. Moreover, the Debtor Releases are appropriate in light of, among other things, the critical nature of the Debtor Releases to the Plan.

41.     The Debtor Releases appropriately offer protection to parties that participated in the Debtors' restructuring process. Each of the Released Parties made significant concessions and contributions to these Chapter 11 Cases. The Debtor Releases for the Debtors' directors and officers as of the Petition Date are appropriate because the Debtors' directors and officers share an identity of interest with the Debtors, supported the Plan and these Chapter 11 Cases, and actively participated in meetings and negotiations during these Chapter 11 Cases to facilitate the negotiation and consummation of the transactions contemplated by the Plan. Further, such parties may assert indemnification claims against the Debtors with respect to claims subject to the Debtor Releases.

42.     **Third Party Release.** The release of Claims and Causes of Action by the Releasing Parties, as described in Article IX.B of the Plan (the "Third Party Release"), was consensually provided after due notice and an opportunity for a hearing and is an essential provision of the Plan. The Third Party Release is a critical and integral component of the Plan, thereby preventing significant and time-consuming litigation regarding parties' respective rights and interests. The

Third Party Release provides finality for the Debtors, their Estates, the Plan Administrator, the Post-Effective Date Debtors, the Transferred Entities, and the other Released Parties regarding the parties' respective obligations under the Plan and the transactions contemplated therein. The Third Party Release was instrumental in developing a Plan that maximized value for all of the Debtors' stakeholders. As such, the Third Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' chapter 11 process by, among other things, supporting the Plan.

43. Notice of the Third Party Release was provided to all Holders of Claims and Interests and such notice was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases. The Combined Hearing Notice was sent to Holders of Claims and Interests and published in *The New York Times* (National Edition) and the *Miami Herald* on December 24, 2024, and the Ballots and Notices, as applicable, sent to Holders of Claims and Interests unambiguously stated that the Plan contains the Third Party Release and that each such Holder of Claims or Interests may elect not to grant such Third Party Release. The release provisions of the Plan were conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, and the Notices. Further, opt-out information was provided in the Notices. The Third Party Release provides appropriate and specific disclosure with respect to the Claims and Causes of Action that are subject to the Third Party Release, and no other disclosure or notice is necessary.

44. The Third Party Release is: (a) consensual; (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; (e) a bar to any of the Releasing Parties' asserting any Claim or Cause of Action released pursuant to the Third Party Release; (f) specific in language and scope; and (g) consistent with sections 105, 524, 1123, 1129 and 1141 and other applicable

provisions of the Bankruptcy Code. Therefore, the Third Party Release is reasonable, appropriate, and consistent with the provisions of the Bankruptcy Code and applicable law.

45. The only Holders of Claims and Interests that have opted out of the Third Party Release are those set forth in the tabulation summary attached as **Exhibit A** to the Voting Report. The only non-voting parties that have opted out of the Third Party Release are those set forth in the opt-out election summary attached as **Exhibit C** to the Voting Report. For the avoidance of doubt, Steward Health Care System LLC and each of its affiliates (collectively, "Steward") have and are hereby deemed to have opted out of the releases set forth in Article IX.B of the Plan, and Steward is not and shall not be deemed a Releasing Party under the Plan. No party shall be bound by the Third Party Release if they did not receive notice and opportunity to opt-out of the Third Party Release. No Holder of Interests in Class 7, solely in its capacity as such, shall be deemed a Releasing Party; *provided* that such Holder may be deemed a Releasing Party in another capacity solely in accordance with the terms of the Plan and this Confirmation Order.

46. **Exculpation.** The exculpation provision included at Article IX.C of the Plan (the "Exculpation") is necessary and appropriate to the Plan. The Exculpation is narrowly tailored to protect estate fiduciaries from inappropriate litigation and to exclude actions found to have constituted actual fraud, willful misconduct, or gross negligence, and upon entry of this Confirmation Order, the Exculpated Parties will be deemed to have participated in good faith and in compliance with all applicable laws with regard to the negotiation and implementation of, among others, these Chapter 11 Cases, the Disclosure Statement, the Plan, the Sale Transactions, or any aspect of the Restructuring Transactions, including any contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or

the reliance by any Exculpated Party on the Plan or this Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the Sale Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpation, including its carve-out for actual fraud, gross negligence, or willful misconduct, is consistent with established practice in this jurisdiction and others.

47. **Injunction.** The injunction provision set forth in Article IX.D of the Plan is essential to the Plan and necessary to preserve and enforce the Debtor Releases, the Third Party Release, and the Exculpation, each as set forth in Articles IX.A, IX.B, and IX.C of the Plan, respectively.

48. In accordance with section 1123(b) of the Bankruptcy Code, the Post-Effective Date Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action and Causes of Action of the Debtors that are not otherwise transferred or sold pursuant to the Sale Transactions, whether arising before or after the Petition Date, and the Post-Effective Date Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article IX of the Plan, which shall be deemed released and waived by the Debtors as of the Effective Date. No Causes of Action shall be retained or preserved by the Debtors

against the Debtors' directors and officers.  No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Post-Effective Date Debtors will not pursue any and all available Causes of Action of the Debtors against it.

49.     The release and discharge of mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates, as described in Article IX.F of the Plan (the "Lien Release") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claim and Interests.

50.     The releases, injunctions, and exculpations set forth in the Plan are fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and all Holders of Claims or Interests.  The record at the Combined Hearing and in these Chapter 11 Cases is sufficient to support the releases, injunctions, and exculpations provided for in Article IX of the Plan.  Accordingly, the Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

**(l)     Treatment of Rights of Holders of Claims—1123(b)(5)**

51.     The Plan is consistent with section 1123(b)(5) of the Bankruptcy Code.  Article III of the Plan modifies or leaves unaffected, as is applicable, the rights of certain Holders of Claims, as permitted by section 1123(b)(5) of the Bankruptcy Code.

**(m)     Additional Plan Provisions—Section 1123(b)(6).**

52.     The other discretionary provisions in the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

### (n) Cure of Defaults – Section 1123(d)

53. Pursuant to the Plan and the Bid Procedures Order, the Debtors served the Notice of Cure Amounts and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale Transaction [Docket No. 257], (the "<u>Assumption and Assignment Notice</u>"), which listed proposed cure amounts, based on the Debtors' books and records, for each Executory Contract and Unexpired Lease that was to potentially be assumed and assigned. The Debtors served sufficient notice on the counterparties to such Executory Contracts and Unexpired Leases, and all issues related to Cure and assumption/assignment of Executory Contracts and Unexpired Leases are resolved or will otherwise be preserved and resolved pursuant to the provision set forth herein. The Plan therefore satisfies the requirements of section 1123(d) of the Bankruptcy Code.

## Q. Debtors Complied with Bankruptcy Code Requirements—Section 1129(a)(2).

54. The Debtors complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court, and thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor:

    a. is an eligible debtor under section 109 of the Bankruptcy Code and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

    b. has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

    c. complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Bankruptcy Local Rules, any applicable non-bankruptcy law, rule and regulation, the Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Packages and the Notice of Non-Voting Status and Release Opt-Out Forms, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**R. Plan Proposed in Good Faith—Section 1129(a)(3).**

55. The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors proposed the Plan in good faith and not by any means forbidden by law. In so determining, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan, the Sale Transactions, and the process leading to Confirmation, including the support of Holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto. These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions for the maximum benefit of all parties in interest and to maximize the value of the Estates and the recoveries to Holders of Claims and Interests.

**S. Payment for Services or for Costs and Expenses—Section 1129(a)(4).**

56. The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**T. Directors, Officers, and Insiders—Section 1129(a)(5).**

57. Because the Plan provides for the dissolution of the existing board of directors of the Debtors and that any remaining directors or officers of the Debtors shall be dismissed, section 1129(a)(5) of the Bankruptcy Code does not apply to the Debtors. To the extent section 1129(a)(5) applies to the Plan Administrator, the Debtors have satisfied the requirements of this provision by, among other things, agreeing to disclose the identities of the Plan Administrator.

**U.     No Rate Change—Section 1129(a)(6).**

58.     Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**V.     Best Interest of the Creditors—Section 1129(a)(7).**

59.     The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The Liquidation Analysis included in the Plan Supplement, and any other evidence related thereto in support of the Plan that was proffered or adduced in the Declarations in Support or at, prior to, or in connection with the Combined Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover more under the Plan on account of such Claim or Interest, as of the Effective Date, than such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**W.     Acceptance by Certain Classes—Section 1129(a)(8).**

60.     Class 1 is Unimpaired under the Plan and has been deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 4, 5, 6, and 7 are not entitled to vote and deemed to reject the plan.  Classes 2 and 3 are Impaired under the Plan and Class 2 has voted to accept the Plan pursuant to section 1126(c) of the Bankruptcy Code.  Accordingly, each Class of Claims or Interests is either Unimpaired or has accepted the Plan and, as such, the Plan complies with Section 1129(a)(8) of the Bankruptcy Code.

**X.     Treatment of Claims Entitled to Priority under Section 507(a)—1129(a)(9).**

61.     The Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code. The treatment of Allowed Administrative Claims, Professional Compensation Claims, and Priority Tax Claims under Article II of the Plan and of Other Priority Claims under Article III of the Plan satisfies the requirements of, and complies in all respects with the treatment required by section 1129(a)(9) of the Bankruptcy Code for each of the various claims specified in sections 507(a)(1)–(8) of the Bankruptcy Code.

**Y.     Acceptance by at Least One Impaired Class—Section 1129(a)(10).**

62.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced in the Voting Report, Class 2 has voted to accept the Plan by the requisite numbers and amounts of interests specified under section 1126(c) of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**Z.     Feasibility—Section 1129(a)(11).**

63.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at or before the Combined Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; (d) establishes that the Plan may be implemented and has a reasonable likelihood of success; (e) establishes that the Debtors, the Plan Administrator, or the Post-Effective Date Debtors, as applicable, will have sufficient funds available to meet their obligations under the Plan; and (f) establishes that the Plan Administrator will have the financial wherewithal to satisfy their obligations following the Effective Date.

**AA.     Payment of Statutory Fees—Section 1129(a)(12).**

64.     The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II.D of the Plan provides for the payment of all fees and charges assessed against the Estates under 28 U.S.C. § 1930.

**BB.     Continuation of Employee Benefits—Section 1129(a)(13).**

65.     The Debtors do not have any obligation to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code). Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases and the Plan.

**CC.     Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

66.     Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases. The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**DD.     "Cram Down" Requirements—Section 1129(b).**

67.     Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8) of the Bankruptcy Code, a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied. Notwithstanding the fact that Classes 3, 5, 6, and 7 have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. Second, the Plan is fair and equitable with respect to Classes 3, 5, 6, and 7. The Plan has been proposed in good faith, is reasonable and meets the requirements that no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on

account of its Claim or Interest. Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in Classes 3, 5, 6, and 7. Third, the Plan does not discriminate unfairly with respect to Classes 3, 5, 6, and 7 because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class. Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**EE.    Only One Plan—Section 1129(c).**

68.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in these Chapter 11 Cases.

**FF.    Principal Purpose of the Plan—Section 1129(d).**

69.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**GG.    No Small Business Case—Section 1129(e).**

70.    The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply.

**HH.    Good Faith Solicitation—Section 1125(e).**

71.    The Debtors acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with all of their activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**II.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

72.    Each of the conditions precedent to the Effective Date, as set forth in Article VIII.A of the Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Article VIII.B of the Plan.

**JJ.    Implementation.**

73.    All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arms' length, are in the best interests of the Debtors and their Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal, state, or local law.  The Debtors, the Plan Administrator, and the Post-Effective Date Debtors, as applicable, are authorized to take any action reasonably necessary, advisable, or appropriate to consummate such agreements and the transactions contemplated thereby.

**KK.    Disclosure of All Material Facts.**

74.    The Debtors disclosed all material facts regarding the Disclosure Statement, the Plan, including with respect to consummation of each of the Sale Transactions, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors, the Plan Administrator, or the Post-Effective Date Debtors, as applicable.

**LL.    Compliance with Bidding Procedures; Appropriate Exercise of Business Judgment.**

75.    The Debtors have complied with the Bidding Procedures in pursuing, proposing, and evaluating proposals for the Core Centers Sale Transaction, the CareMed Pharmacy Sale Transaction, the Care Optical Sales Transaction, and the Clear Scripts Sale Transaction.

The Debtors have complied with the Bidding Procedures in (a) selecting the Core Centers Purchaser as the Successful Bidder (as defined in the Bidding Procedures) for the Core Centers Assets, (b) selecting the CareMed Pharmacy Purchaser as the Successful Bidder for the CareMed Pharmacy Assets, (c) selecting the Care Optical Purchaser as the Successful Bidder for the Care Optical Assets, and (d) selecting the Clear Scripts Purchaser as the Successful Bidder for the Clear Scripts Assets. The Debtors' decisions to effectuate the Sale Transactions and to select (a) the Core Centers Purchaser as the Successful Bidder for the Core Centers Assets, (b) the CareMed Pharmacy Purchaser as the Successful Bidder for the CareMed Pharmacy Assets, (c) the Care Optical Purchaser as the Successful Bidder for the Care Optical Assets are appropriate exercises of their business judgment, and (d) the Clear Scripts Purchaser as the Successful Bidder for the Clear Scripts Assets are appropriate exercises of their business judgment.

**MM. Sale Transactions.**

76. Each of the ACO SPA, the Core Centers APA, the CareMed Pharmacy SPA, the Care Optical SPA, and the Clear Scripts SPA (collectively, the "Purchase Agreements," and with respect to the applicable purchasers thereunder, the "Purchasers") are an essential element of the Plan, and entry into each of the Purchase Agreements is in the best interests of the Debtors, their estates, and their creditors. The Debtors have exercised sound business judgment in determining to enter into each of the Purchase Agreements and have provided adequate notice thereof. Each of the Purchase Agreements has been negotiated in good faith and at arm's length among the Debtors and the applicable Purchasers, and any fees paid thereunder are deemed to have been extended, issued, and made in good faith. None of the Debtors, the Purchasers, or any of their respective affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective current and former members, managers, officers, directors, employees, advisors, professionals, agents, predecessors, successors or assigns have engaged in

any conduct that would cause or permit the Purchase Agreements or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. For purposes of section 363(m) of the Bankruptcy Code, (a) in negotiating the ACO SPA, the ACO Purchaser has acted and will be acting in good faith; (b) in negotiating the Core Centers APA, the Core Centers Purchaser has acted and will be acting in good faith; (c) in negotiating the CareMed Pharmacy SPA, the CareMed Pharmacy Purchaser has acted and will be acting in good faith; (d) in negotiating Care Optical SPA, the Care Optical Purchaser has acted and will be acting in good faith; and (e) in negotiating the Clear Scripts SPA, the Clear Scripts Purchaser has acted and will be acting in good faith. Each of the aforementioned Purchasers under the Purchase Agreements is therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code. Moreover, the Debtors and the ACO Purchaser have complied in all material respects with the Bankruptcy Court's *Order (I) Authorizing and Approving (A) Assumption of and Performance of Obligations Under the ACO TSA, and (B) The ACO Break-Up Fee; and (II) Granting Related Relief* [Docket No. 250] (the "<u>ACO SPA Order</u>").

77.     With respect to each of the transactions contemplated in the Purchase Agreements, and consistent with the Bankruptcy Court's findings described in the ACO SPA Order, no other person, entity, or group of entities has offered to purchase the applicable assets for greater overall value to the Debtors' Estates than as reflected in the Purchase Agreements. The Purchase Agreements memorialize the highest and best offers for each of the applicable assets and will provide substantial consideration as well as greater recoveries to the Debtors' Estates than would be provided by any available alternatives. The Debtors' determination that the Purchase Agreements constitute the highest and best offers is a valid and sound exercise of the Debtors'

business judgment. Consummation of the Purchase Agreements is in the best interest of the Debtors' Estates, their creditors, and other parties in interest.

78.     The Purchasers are not mere continuations or substantial continuations of the Debtors or their Estates and there is no continuity of enterprise or common identity between the Purchasers and any of the Debtors. None of the Purchasers are holding themselves out of the public as a continuation of any of the Debtors. The Purchasers are not successors to the Debtors or their Estates by reason of any theory of law or equity, and the transactions contemplated in the Purchase Agreements do not amount to consolidations, mergers, or *de facto* mergers of the Purchasers with or into any of the Debtors. The Purchasers have entered into the Purchase Agreements in material reliance on and with fair consideration provided for the assets subject to the transactions contemplated in the Purchase Agreements being free and clear of all claims and interests relating to the Debtors arising prior to the closing of the Purchase Agreements, except as expressly provided under the Purchase Agreements, the Plan, or this Confirmation Order, including any successor or vicarious liabilities of any kind or nature, as set forth herein and in the Purchase Agreements, and the Purchasers would not have entered into the Purchase Agreements without such terms and the findings herein.

79.     The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell assets and property of the Estates pursuant to the Purchase Agreements free and clear of any claims, liens, encumbrances, or other interests of any kind or nature whatsoever other than as expressly provided by the terms of the Purchase Agreements, the Plan, or this Confirmation Order. In addition to and without limiting the foregoing, the transactions contemplated in the ACO SPA are to be consummated under the Plan, and the assets and property to be sold pursuant to the ACO SPA are dealt with by the Plan, the ACO SPA Order, and this

Confirmation Order; therefore, except as expressly provided under the ACO SPA, the ACO SPA Order, or this Confirmation Order, the Debtors may sell assets and property pursuant to the ACO SPA free and clear of any claims, liens, encumbrances, or other interests of any kind or nature whatsoever pursuant to section 1141(c) of the Bankruptcy Code.

80.     The Debtors may sell such assets free and clear of all claims, liens, encumbrances, and other interests of any kind or nature whatsoever (other than as expressly permitted under the Purchase Agreements, the Plan, or this Confirmation Order) because, in each case, one or more of the standards set forth in sections 363(f)(l)–(5), 1129(b)(2)(A)(ii), 1141(a), or 1141(c) of the Bankruptcy Code has been satisfied. All holders of such claims, liens, encumbrances, or other interests against the Debtors, their Estates, or any of the assets subject to the Purchase Agreements (a) who did not object, or who withdrew their objections, to the transactions contemplated in the Purchase Agreements are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code and (b) are bound by this Confirmation Order or the Plan pursuant to section 1141(a) of the Bankruptcy Code.  All holders of such claims, liens, encumbrances, or other interests are adequately protected by having their claims, liens, encumbrances, or other interests, if any, in each instance against the Debtors, their Estates, or any of the assets subject to the Purchase Agreements, attach to the net cash proceeds of the sales contemplated in the Purchase Agreements ultimately attributable to the assets in which such creditor alleges a claim, lien, encumbrance, or other interest, in the same order of priority, with the same validity, force, and effect that such claim, lien, encumbrance, or other interest had prior to consummation of the Purchase Agreements, subject to any claims and defenses the Debtors and their Estates may possess with respect thereto, and with such claims, liens, encumbrances, or other interests being treated in accordance with the Plan.

**NN.     Satisfaction of Confirmation Requirements.**

81.     Based on the foregoing, the Declarations in Support, and all other pleadings and evidence proffered or adduced at or prior to the Combined Hearing, the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

82.     **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

83.     **Disclosure Statement, Solicitation Packages, Tabulation Procedures, and Solicitation Procedures**.  The Disclosure Statement, the Solicitation Packages, and the Solicitation Procedures are **APPROVED** on a final basis in all respects pursuant to section 1125 of the Bankruptcy Code.

84.     **Confirmation of the Plan.**  The Plan, attached hereto as **Exhibit A**, as and to the extent modified by this Confirmation Order, is approved and **CONFIRMED** in its entirety pursuant to section 1129 of the Bankruptcy Code.  All Plan documents necessary for implementation of the Plan, including those in the Plan Supplement, are hereby approved and incorporated herein by reference as an integral part of this Confirmation Order.  The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article,

section, or provision, it being the intent of this Confirmation Order that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

85. **Selection of Successful Bidders and Decision to Effect Sale Transactions**. The Debtors' determination that (a) the Core Centers Purchaser was the Successful Bidder for the Core Centers Assets (as defined in the Bidding Procedures), that (b) the CareMed Pharmacy Purchaser was the Successful Bidder for the CareMed Pharmacy Securities, (c) the Care Optical Purchaser was the Successful Bidder for the Care Optical Securities, and (d) the Clear Scripts Purchaser was the Successful Bidder for the Clear Scripts Securities, and the Debtors' decision to effectuate each of the Sale Transactions, were appropriate and satisfactory and are approved in all respects.

86. **Approval of Core Centers Sale Transaction**. The Core Centers APA, and the consummation of the transaction contemplated thereby (the "Core Centers Sale Transaction") are APPROVED. The Debtors and their officers, agents, professionals and other representatives are authorized and directed to take all actions and consummate all transactions contemplated under the Core Centers APA, in accordance with the Plan and this Order. The Debtors and the Core Centers Purchaser are hereby authorized to perform their respective covenants and undertakings as provided in the Core Centers APA without further order of the Court. The Core Centers Purchaser and the Debtors shall have no obligation to close the Core Centers Sale Transaction except as is contemplated and provided for in the Core Centers APA. The Core Centers Purchaser, having submitted the Successful Bid, is the Successful Bidder. The Core Centers Purchaser may operate free of any restrictions of the Bankruptcy Code.

87. **Good Faith Purchaser**. The Core Centers APA has been entered into by the Core Centers Purchaser in good faith and the Core Centers Purchaser is a good faith purchaser of the Core Centers Assets as that term is used in section 363(m) of the Bankruptcy Code, and

accordingly, the reversal or modification on appeal of the authorization of the Core Centers Sale Transaction provided herein shall neither affect the validity of Core Centers Sale Transaction nor the transfer of the Core Centers Assets to Core Centers Purchaser, free and clear, unless such authorization is duly stayed before the Closing pending such appeal. The Core Centers Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code, and the Core Centers Purchaser otherwise has proceeded in good faith in all respects in connection with the Core Centers Sale Transaction specifically and this Chapter 11 Case generally.

88.     **Consideration for the Core Centers Assets**. The consideration provided by the Core Centers Purchaser for the Core Centers Assets under the Core Centers APA is hereby deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Core Centers Sale Transaction may not be avoided, or costs or damages imposed or awarded under section 363(n) or any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act or any other similar state laws.

89.     **Title to the Core Centers Assets**. Upon closing of the Core Centers Sale Transaction, this Order shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Debtors' right, title and interest in all of the Core Centers Assets and a bill of sale transferring good, marketable, and valid title in such Core Centers Assets to the Core Centers Purchaser pursuant to the terms of the Core Centers APA on a Free and Clear basis.

90.     **Surrender of Possession**. Any and all Core Centers Assets in the possession or control of any person or entity, including any vendor, supplier or employee of the Debtors, shall be transferred to the Core Centers Purchaser Free and Clear, and shall be delivered to the Core

Centers Purchaser and deemed delivered at the time of Closing (or such other time as provided in the Core Centers APA).

91. **No Bulk Sales**. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Core Centers APA or this Order.

92. **Release of Interests**. Effective upon the Closing Date, this Order: (a) is and shall be effective as a determination that all Claims and Interests (other than Permitted Liens or Assumed Liabilities) of any kind or nature whatsoever existing as to the Core Centers APA before the Closing Date have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected; (b) is and shall be binding upon and shall govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Core Centers Assets conveyed to the Core Centers Purchaser, and all recorded Claims and Interests (other than Permitted Liens[3] or Assumed Liabilities[4]) against the Core Centers Assets shall be deemed stricken from such entities' records, official and otherwise.

93. **Approval to Release Claims and Interests**. If any person or entity that has filed financing statements, mortgages, mechanic's liens or other documents or agreements evidencing

---

[3] "Permitted Liens" throughout this Confirmation Order to be defined as "Permitted Liens" in the Asset Purchase Agreement [Docket No. 132-2].

[4] "Assumed Liabilities" throughout this Confirmation Order to be defined as "Assumed Liabilities" in the Asset Purchase Agreement [Docket No. 132-2].

Claims and Interests in, Liens on the Core Centers APA shall not have delivered to the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, the appropriate documentation with respect to the release of such Claims and Interests, the Debtors and/or the Core Centers Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Core Centers Assets. The Core Centers Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims and Interests against the Core Centers APA other than the Permitted Liens and the Assumed Liabilities. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.

94. **Allocation of Assets**. The Core Centers Purchaser is hereby authorized in connection with the consummation of the Core Centers Sale Transaction to allocate the Core Centers Assets, including without limitation the Assigned Contracts, among its affiliates, designees, assigns, and/or successors, in accordance with the terms of the Core Centers APA, and to assign, lease, sublease, license, sublicense, transfer, or otherwise dispose of any of the Core Centers Assets or the rights to purchase or acquire any of the Core Centers Assets, including without limitation the Assigned Contracts, to its affiliates, designees, assignees and/or successors with all of the rights and protections accorded to the Core Centers Purchaser under this Order and the Core Centers APA with respect thereto. The Debtors shall cooperate with and take all actions reasonably requested by the Core Centers Purchaser to effectuate any of the foregoing.

95. **Governmental Authorization to Effectuate Sale and Assignments**. Each and every federal, state and governmental agency or department, and any other person or entity, is

hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the transactions contemplated by the Core Centers APA. No governmental unit may revoke or suspend any lawful right, license, trademark or other permission relating to the use of the Core Centers Assets sold, transferred or conveyed to the Core Centers Purchaser on account of the filing or pendency of this Chapter 11 Case or the consummation of the Core Centers Sale Transaction. For the avoidance of doubt, the sale of the Core Centers APA authorized herein shall be of full force and effect, regardless of whether the Debtors or any of its affiliates lack good standing in any jurisdiction in which such entity is formed or is authorized to transact business.

96. **Additional Orders**. After the Effective Date, the Core Centers Purchaser may present such Order(s) or assignment(s) to the Bankruptcy Court, for entry or approval and suitable for filing in the records of every county or governmental agency where the Core Centers Assets are or were located, which provide that such property is conveyed to and vested in the Core Centers Purchaser. The Order(s) or assignment(s) may designate all the Core Centers Assets Free and Clear of all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred. The Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished, and no notice, other than by the Plan, shall be given prior to the presentation of such Order(s) or assignment(s). Any Person having a Lien, Claim, encumbrance, or other interest against any Core Centers Assets shall be conclusively deemed to have consented to the transfer, assignment and vesting of such Core Centers Assets Free and Clear to the Core Centers Purchaser.

97. **References to Core Centers APA**. The failure specifically to include or reference any particular provision of the Core Centers APA or any related ancillary document in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the

Bankruptcy Court that the Core Centers APA and all related ancillary documents by authorized and approved, each in its entirety and such related agreements be approved and effectuated in their entirety (except as otherwise modified in this Order).

98. **Automatic Stay**. The Core Centers Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Core Centers APA or any other sale-related document.

99. **Headings**. Headings utilized in this Confirmation Order are for convenience of reference only and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

100. **Objections**. All objections (including any reservations of rights contained therein) to approval of Confirmation of the Plan or the Sale Transactions that have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted herein, or are not otherwise resolved as stated by the Debtors on the record of the Combined Hearing, are **OVERRULED** and **DENIED** on the merits and in their entirety, and all withdrawn objections are deemed withdrawn with prejudice.

101. **Deemed Acceptance of Plan.** In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims or Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan, as modified by the Plan Modifications and this Confirmation Order. No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of any Plan Modifications.

102. **No Action Required**. Under section 1142(b) of the Bankruptcy Code and any other comparable provisions under applicable law, no action of the respective directors, equity holders, managers, or members of the Debtors is required to authorize the Debtors to enter into, execute,

deliver, File, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the Sale Documents.

103. **Immediate Binding Effect**. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Core Centers APA shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, or the Plan Administrator, the Post-Effective Date Debtors, the Holders of Claims or Interests, the Released Parties, the Core Centers Purchaser and each of their respective successors and assigns. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

104. Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder, and all motions or requests for relief by the Debtors pending before this Bankruptcy Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Post-Effective Date Debtors, the Plan Administrator, as applicable, and their respective successors and assigns.

105. **Classification and Treatment.** The Plan's classification scheme is approved. The terms of the Plan shall govern the classification and treatment of Claims and Interests for purposes of the distributions to be made thereunder.

106. **Subordination of Claims.** The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall

take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

107. **Insurance**. Notwithstanding anything to the contrary in the Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

108. **Wind-Down**. On or before the Effective Date, the Debtors or the Plan Administrator shall enter into and take any actions that may be necessary or appropriate to effectuate the Sale Transactions or the Wind-Down of the Debtors, as applicable, including but not limited to: (1) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, the Plan Supplement, and the RSA; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, the Plan Supplement, and the RSA and having other terms to which the applicable Entities may agree; (3) the issuance and distribution of the Sale Transaction Equity Consideration as set forth in the Plan; (4) the filing of appropriate documents with the appropriate governmental authorities pursuant to applicable Law; (5) such other

transactions that are required to effectuate the Restructuring Transactions; (6) the distribution of Distributable Cash in accordance with the Plan; (7) enforcing the ACO SPA and collecting the CareMax Recoverable MSSP payments in accordance with the ACO SPA; and (8) any and all other actions that the Debtors or the Plan Administrator determine are necessary or appropriate to effectuate the Plan.

109. **Sources of Consideration for Plan Distributions**. Subject to the provisions of the Plan concerning the Professional Fee Reserve Account and the Wind-Down Budget, the Debtors or the Post-Effective Date Debtors or the Plan Administrator shall fund the transactions and distributions under the Plan from (a) Available Cash, (b) proceeds from the DIP Facility, and (c) proceeds from the Sale Transactions.

110. On or before the Effective Date, the Debtors or the Plan Administrator shall take any actions that may be necessary or appropriate to effectuate the Sale Transactions in accordance with the Bid Procedures Order and the Plan.

111. The Debtors or the Post-Effective Date Debtors or the Plan Administrator shall use Cash on hand to pay the fees and expenses of administering their respective functions and to fund distributions to Holders of Allowed Claims and Allowed Interests, consistent with the terms of the Plan.

112. The Debtors, Post-Effective Date Debtors or the Plan Administrator shall use the recovery, if any, from prosecution or settlement of the Retained Causes of Action to fund distributions to certain Holders of Allowed Claims and Allowed Interests, consistent with the terms of the Plan.

113. **Vesting of Assets**. Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each

Estate, all Executory Contracts and Unexpired Leases assumed, but not assigned, by any of the Debtors, and any property acquired by any of the Debtors, including Interests held by the Debtors in non-Debtor subsidiaries or Post-Effective Date Debtor Causes of Action, shall vest in each respective Debtor (including any Transferred Entity), free and clear of all Liens, Claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or this Confirmation Order; provided, that any Remaining Assets held by a Transferred Entity that are excluded and otherwise not vested in the Transferred Entity, shall instead vest in the Post-Effective Date Debtors. Subject to the terms of the Plan, on or after the Effective Date, the Plan Administrator may use, acquire, and dispose of the Remaining Assets, and may prosecute, compromise, or settle any Claims and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or this Confirmation Order.

114. **Setoff and Recoupment**. Except as expressly provided in the Plan, each Post-Effective Date Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Post-Effective Date Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Post-Effective Date Debtor and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Court or another court of competent jurisdiction; *provided*, *however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Post-Effective Date Debtor, or its successor of any and all claims, rights, and Causes of Action that the Post-Effective Date Debtor, or its successor may possess against the applicable Holder. In no event shall any Holder of a Claim be entitled to recoup

such Claim against any claim, right, or Cause of Action of the Debtors or Post-Effective Date Debtors as applicable, unless such Holder actually has performed such recoupment in advance and provided notice thereof in writing with consents or Court authority and in accordance with the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment. For the avoidance of doubt, nothing in the Plan, this Order, or Sale Documents shall enjoin or affect any valid setoff rights under federal law as recognized in section 553 of the Bankruptcy Code and applicable law, or recoupment rights, *provided, however,* that the rights and defenses of the Debtors with respect thereto are fully preserved.

115. **Preservation of Causes of Action**. In accordance with section 1123(b) of the Bankruptcy Code, the Plan Administrator shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action and Causes of Action of the Debtors that are not otherwise transferred or sold pursuant to the Sale Transactions, whether arising before or after the Petition Date, and the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article IX of the Plan, which shall be deemed released and waived by the Debtors and the Plan Administrator as of the Effective Date. No Causes of Action shall be retained or preserved against the Debtors' directors and officers except as otherwise determined by the Disinterested Director prior to the Combined Hearing. No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that

the Plan Administrator will not pursue any and all available Causes of Action of the Debtors against it.

116. **Corporate Action.** The Post-Effective Date Debtors or the Transferred Entities, as applicable, are authorized to enter into and effectuate the Restructuring Transactions, including the entry into and consummation of the transactions contemplated by the Sale Transactions, including the ACO SPA, the Core Centers APA, the Pharmacy Sale Documents, and the Care Optical Sale Documents, and may take any actions as may be necessary or appropriate to effectuate a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of any of the Transferred Entities, as and to the extent provided in the Plan. Any transfers of assets or equity interests effected or any obligations incurred through the Restructuring Transactions, including the Sale Transactions, are hereby approved. Such transfers and obligations are made for reasonably equivalent value (as those terms are defined in each of the Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code, any other laws of the United States, and the laws of any state, territory, possession, and the District of Columbia, and they shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance. Except as otherwise expressly provided in the Plan, each Transferred Entity shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under the applicable law in the jurisdiction in which such applicable Transferred Entity is incorporated or formed.

117. On the Effective Date and following satisfaction of the Debtors' distribution and funding requirements set forth in the Plan, the Post-Effective Date Debtors shall be dissolved for all purposes unless the Plan Administrator determines that dissolution can have any adverse impact on the Remaining Assets (for the avoidance of doubt none of the Transferred Entities shall be dissolved); *provided*, that neither the Debtors nor any party released pursuant to Article IX of the Plan shall be responsible for any liabilities that may arise as a result of non-dissolution of the Debtors. The Plan Administrator shall submit with the appropriate governmental agencies a copy of this Confirmation Order, which Confirmation Order shall suffice for purposes of obtaining a certificate of dissolution from the applicable secretary of state (or each of their equivalents).

118. Without limiting the foregoing, and except as otherwise expressly set forth in the Sale Documents, on the Effective Date and following satisfaction of the Debtors' distribution and funding requirements set forth in the Plan, the Debtors shall have no further duties or responsibilities in connection with implementation of the Plan, and the directors and officers of the Debtors shall be deemed to have resigned and the employees of the Debtors terminated. From and after the Effective Date, the Plan Administrator shall be authorized to act on behalf of the Estates, provided that the Plan Administrator shall have no duties other than as expressly set forth in the Plan or this Confirmation Order.

119. **Cancellation of Existing Securities and Agreements.** Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, the Prepetition Documents and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or

documents evidencing or creating indebtedness or obligations of (or ownership interest in) the Debtors that are Reinstated pursuant to the Plan) shall be deemed canceled, discharged and of no force or effect, without further action or approval of the Court. The Debtors, the Transferred Entities, the Post-Effective Date Debtors, or any Holder, and the Prepetition Agent and its agents, successors and assigns shall be automatically and fully released and discharged of and from all duties as applicable under the Prepetition Documents, except, as applicable, as necessary to (a) enforce the rights and Claims of the Prepetition Agent, and any predecessor thereof, vis-à-vis parties other than the Released Parties, (b) allow the receipt of and distributions under the Plan, (c) preserve any rights of the Prepetition Agent to payment of fees, expenses, and Indemnification Obligations as against any distributions, (d) allow the Prepetition Agent to exercise rights and enforce obligations relating to the Plan; and (e) allow the Prepetition Agent to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court.

120.    Subsequent to the performance by the Prepetition Agent of its obligations under the Plan, the Prepetition Agent and its respective agents shall be relieved of all further duties and responsibilities related to the Prepetition Documents upon the occurrence of the Effective Date, except with respect to such other rights of the Prepetition Agent that, pursuant to the Prepetition Documents, survive the termination of the Prepetition Documents.

121.    The obligations of the Debtors pursuant, relating, or pertaining to any other agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, indentures, certificates, notes, or other instruments or documents evidencing or creating indebtedness or obligations of the

Debtors that are Reinstated pursuant to the Plan) shall be released and discharged; provided that notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim or Interest shall also continue in effect to allow such Holder to appear and be heard in the Chapter 11 Cases or in any proceeding in the Court or any other court, including, without limitation, to enforce the respective obligations owed to such parties under the Plan.

122.     Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in the Plan shall be deemed null and void and shall be of no force and effect solely in connection with such cancellations, terminations, satisfactions, releases or discharges. Nothing contained in the Plan shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under (i) any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors pursuant to a Final Order of the Court or hereunder or (ii) any Claims or Interests that are Reinstated pursuant to the terms of the Plan.

123.     **Effectuating Documents; Further Transactions.** Upon entry of this Confirmation Order, subject to the terms of the RSA, the Debtors or the Plan Administrator (as applicable) shall be authorized to execute, deliver, File, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan.  Subject to the terms of the RSA, the Debtor, the Plan

Administrator, all Holders of Claims receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate actions required by the Debtors in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized Persons, or officers of the Debtors or the Plan Administrator.

124.     **Section 1146 Exemption from Certain Taxes and Fees.** Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment.

125.     **Authority to Act.** Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state(s) in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders,

officers, directors, or other owners of the Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

126. **Separate Plans.** Notwithstanding the combination of separate plans for the Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each Debtor.

127. **General Settlement of Claims and Interests.** Pursuant to section 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions, releases, and other benefits provided pursuant to the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest Holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019 (other than with respect to the Third Party Release). The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of such Claims and Interests, and is fair, equitable, and reasonable.

128. **Assumption and Rejection of Executory Contracts and Unexpired Leases.** On the Effective Date, except as otherwise provided herein (which exclusion includes the Indemnification Obligations and the D&O Liability Insurance Policies), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an

order of the Bankruptcy Court, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are (i) the subject of a motion to assume that is pending on the Confirmation Date, (ii) set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, or (iii) subject to an unresolved Cure dispute as of the Effective Date and shall be assumed, assumed and assigned, or rejected, as applicable, upon the resolution of such Cure dispute in accordance with the Sale Transactions or otherwise as set forth herein.

129.     Assumption of any Executory Contract or Unexpired Lease pursuant to the Sale Documents or the Plan, including, for the avoidance of doubt, the ACO Transferred Contracts, and payment of any Cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption, which, for the avoidance of doubt, shall be the Effective Date for the ACO Transferred Contracts. Subject to the foregoing, such assignment shall be effective without the need for any further action or consents that may otherwise be required under applicable nonbankruptcy law. There is adequate assurance of future performance for the contracts to be assumed and assigned as part of the ACO Sale Transaction and the Core Centers Sale Transaction. From the date of the closing under the Core Centers APA to the Core Centers Purchaser (the "Closing"), until the earliest of (a) the date of the assumption of an Executory Contract assumed and assigned to the Core Centers Purchaser or (b) the rejection of an executory contract, whether by virtue of an express rejection of the executory contract or by expiration of the

Core Center Purchaser's option to accept assignment of such contract (each assumed or rejected contract, an "Applicable Contract") it is understood and agreed that ClareMedica Viking, LLC will act as limited agent for the Debtors under the Applicable Contract solely for the purpose of continuing to provide the applicable services of the Debtors (or their affiliates) under and in accordance with the terms of such Applicable Contract. In the event that the Core Centers Purchaser (or its affiliate) provides any such services pursuant to an Applicable Contract, the Debtors or its successor shall promptly remit any payment received in connection with such Applicable Contract to ClareMedica Viking, LLC. For the avoidance of doubt, the Core Centers Purchaser's actions pursuant to this paragraph of this Confirmation Order is not an assumption of an Applicable Contract and the Core Purchaser shall not be responsible for any liability in respect of any such Applicable Contract (whether such liability accrued prior to, as of or following the Closing), other than as a result of the gross negligence or willful misconduct of the Core Centers Purchaser in performing any such services; *provided* further that nothing herein shall limit, amend or otherwise alter any rights of the Core Centers Purchaser set forth in this Confirmation Order or the Core Centers APA.

130.     Any objection to the proposed assumption or cure amount filed in the Schedule of Assumed Executory Contracts and Unexpired Leases by such counterparty must be Filed by no later than the date provided in the Notice of Assumption, Confirmation Order or any other order of the Bankruptcy Court establishing the date by which such objections must be Filed. The Debtors or the Core Centers Purchaser, as applicable, reserve the right to remove an Executory Contract or Unexpired Lease from the Schedule of Rejected Executory Contracts and Unexpired Leases and move it to the Schedule of Assumed Executory Contracts and Unexpired Leases until 30 days after the Core Centers Sale Transaction closes. The Debtors or the Core Centers Purchaser, as

applicable, reserve the right to remove an Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases and move it to the Schedule of Rejected Executory Contracts and Unexpired Leases until 30 days after the Core Centers Sale Transaction closes, or to take other action as is necessary and appropriate to avoid overpayment or duplicate payments for the Cure Amounts; *provided* that, for the avoidance of doubt, that with respect to Unexpired Leases included on the Schedule of Assumed Executory Contracts and Unexpired Leases as of Closing, the Core Centers Purchaser will pay all rental obligations for the period between Closing and the assumption or rejection of such Unexpired Leases; *provided further* that, in the event that such rental obligations for such period are not timely paid in accordance with the terms of the applicable Unexpired Lease, the rights of the applicable counterparty to such Unexpired Lease to file an administrative claim as against the Debtors on account of unpaid rental obligations during the period are hereby reserved and preserved, and such claim may be filed up to forty-five (45) days after the Closing Date (as defined in the Core Centers APA) for the Core Centers Sale Transaction. The ACO Purchaser reserves the right to remove such Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases at any time prior to the Closing (as defined in the ACO SPA) of the ACO Sale Transaction. Notwithstanding anything to the contrary herein, on the Closing Date (as defined in the ACO SPA), all Accepted Contracts (as defined in the ACO SPA) shall be assumed by the applicable Debtor; *provided* that the foregoing shall not abridge any party's rights to timely object, with such and any pending Cure disputes being preserved and to be resolved in accordance with the provision set forth herein; *provided further*, that if any party files an objection to the proposed assumption or cure amount for an Accepted Contract, then, at the ACO Purchaser's election at any time during the pendency of the dispute and, in any event, within five business days of the

Bankruptcy Court fixing a cure amount greater than the amount listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, (a) such Executory Contract shall be rejected by the applicable Debtor and treated as if it was not assumed as of the Closing, and any counterparty to an Executory Contract that is rejected pursuant to a Cure dispute as described in this clause shall have no right of recovery whatsoever against the ACO Purchaser and shall only be entitled to a claim against the Debtors' Estates for rejection damages (if any), (b) such objection shall be settled without the requirement for any further notice or order and such Accepted Contract shall remain assumed, or (c) such Accepted Contract shall remain assumed subject to payment of the required Cure amount by the applicable party as set forth in the ACO SPA. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or Cure Claim. Any and all negotiation, litigation (including of any objection to assumption), dispute resolution or any other matters regarding the assumption of Executory Contracts and Unexpired Leases shall be carried out by the Core Centers Purchaser after the Bankruptcy Court enters this Confirmation Order.

131.    The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and this Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable. Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and this Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with the provisions herein.

132.    Nothing in the Plan, Confirmation Order, Sale Documents, or related Plan documents ("Plan Documents") shall (i) authorize the transfer or assignment of any federal

(A) grants, (B) grant funds, (C) contracts, (D) property, including intellectual property and patents, (E) leases, (F) agreements, (G) certifications, (L) permits, (M) covenants, (N) guarantees, (O) indemnifications, (P) data, (Q) records,(R) inventory, (S) payment obligations, (T) Medicare agreements, or (U) other interests of the United States (collectively, "Federal Interests"), without compliance with all terms of the Federal Interests, as applicable, and with all applicable non-bankruptcy law; or (ii) be interpreted to set cure amounts owed to or on behalf of the United States or to require the United States to novate, approve, or otherwise consent to the assumption, sale, assignment, or transfer of any Federal Interests. This paragraph shall not be construed to conflict with the rights or obligations of the Core Centers Purchaser under the Core Centers APA or the ACO Purchaser under the ACO SPA.

133.    To the extent that the Debtors, the ACO Entities, and/or the ACO Purchaser seek to assume and assign, effect a change in control, or otherwise transfer any of the participation agreements between CMS and the ACO Entities (the "Participation Agreements"), such assumption and assignment will be accomplished in a manner that is consistent with the relevant provisions of the Bankruptcy Code and applicable law. Nothing in the Plan Documents diminishes or enlarges CMS' rights with respect to any surety bonds obtained for the benefit of CMS. Nothing in the Plan Documents shall authorize the assumption or assignment of any of the Participation Agreements without any required consent of CMS (if any) provided for under the Bankruptcy Code and applicable law; provided that nothing herein will constitute a waiver of any rights or obligations under the Participation Agreements post-closing. Approximately eighteen (18) Debtor entities are, or at one time were, enrolled as providers in Part B of the Medicare Program (collectively, the "Debtor Part B Providers") pursuant to separate provider enrollment agreements (collectively, the "Provider Agreements" and each, a "Provider Agreement"); *provided* that, for

the avoidance of doubt, no ACO Entity participating in the MSSP is enrolled as a provider in Part B of the Medicare Program. CMS may recoup from the applicable Transferred Entities and/or the applicable Debtor Part B Provider any payments due under the applicable Provider Agreements (for the avoidance of doubt, the Participation Agreements with the ACO Entities participating in the MSSP are not Provider Agreements) any Part B overpayments from CMS to any of the Debtor Part B Providers in accordance with the Medicare Act, federal regulations, the terms of the Provider Agreements, and the Parties' prior ordinary course business practices. Nothing in the Plan Documents shall affect (a) the Secretary of the Department of Human and Health Services' ("HHS") and CMS's authority and exclusive jurisdiction to determine the amounts due to or owed by the Debtors and/or any Transferred Entities under the Participation Agreements, the MSSP model, the ACO REACH model, and the Provider Agreements or to regulate any Entity's enrollment or participation as a Medicare provider; (b) the right and authority of HHS, CMS, or CMS's contractors to review, approve, deny, or pay Medicare claims in the ordinary course of business in accordance with Medicare Program Law; or (c) any rights, claims or defenses of any other federal entity other than CMS, including other components of HHS and the Department of Justice.

134. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and this Confirmation Order that are not timely Filed within thirty (30) days of the Effective Date will be disallowed automatically, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, the Plan Administrator, or the Post-Effective Date Debtors, or any of their respective assets and properties;** *provided* **that with respect to the Core Centers APA, to the extent an Executory Contract or Unexpired Lease included on the Schedule of Assumed Executory Contracts and**

Unexpired Leases for the Core Centers APA as of the Closing Date (as defined in the Core Centers APA, the "<u>Core Centers Closing Date</u>")[5] (and such Executory Contract or Unexpired Lease, a "<u>Core Centers Designated Contract</u>") is removed from such Schedule of Assumed Executory Contracts and Unexpired Leases at any time prior to the date that is thirty (30) days after the Core Centers Closing Date, any Claim arising from the rejection of such Core Centers Designated Contract shall be timely Filed to the extent Filed within forty-five (45) days of the Core Centers Closing Date; *provided further* that with respect to the CareMed Pharmacy SPA, to the extent an Executory Contract or Unexpired Lease included on the Schedule of Assumed Contracts and Unexpired Leases for the CareMed Pharmacy SPA as of the Closing (as defined in the CareMed Pharmacy SPA, the "<u>CareMed Closing Date</u>", and such Executory Contract or Unexpired Lease, a "<u>CareMed Designated Lease</u>") is removed from such Schedule of Assumed Executory Contracts and Unexpired Leases at any time prior to the date that is thirty (30) days after the CareMed Closing Date, any Claim arising from the rejection of such CareMed Designated Contract shall be timely Filed to the extent Filed within forty-five (45) days of the CareMed Closing Date. Notwithstanding the foregoing, the United States shall not be required to file any proof of claim prior to the Governmental Bar Date.

135.    **Indemnity Obligations.**  Excluding the ACO Entities, each of the Debtors' Indemnification Obligations shall not be discharged, impaired, or otherwise affected by the Plan (except as set forth below).  The Indemnification Obligations of the Debtors (excluding the ACO Entities) shall be deemed Executory Contracts assumed or assumed and assigned by the Debtors under the Plan; provided, however, that such Persons designated by the Disinterested Director prior to the Combined Hearing shall not be entitled to any indemnity or similar obligations owed

---

[5] As used in this paragraph 134, the term "<u>Closing Date</u>" has the meaning provided in the Core Centers APA.

by any of the Debtors and, if so, such obligations are hereby rejected and expressly not assumed by Debtors or Post-Effective Date Debtors (or the ACO Entities). Any Indemnification Obligations not assumed under the ACO Entities will instead be assumed by the Post-Effective Date Debtors. Notwithstanding the foregoing, no Indemnification Obligations of (x) former directors and officers of any of the Debtors as of the Petition Date and (y) Dr. Ralph de la Torre, M.D. shall be assumed by the Debtors or the Post-Effective Date Debtors without the written consent of the Required Consenting Term Loan Lenders.

136. **D&O Liability Insurance Policies.** Each D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) shall be treated as an Executory Contract under the Plan and shall be assumed, in its entirety, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date, pursuant to sections 105, 365, and 1123 of the Bankruptcy Code. For the avoidance of doubt, coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in the D&O Liability Insurance Policies. In addition, after the Effective Date, all officers, directors, agents, or employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Liability Insurance Policies (including any "tail" policy) in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in the D&O Liability Insurance Policies.

137. The Debtors shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all agreements,

documents, or instruments related thereto) in effect prior to the Effective Date and shall continue such policies and satisfy their obligations thereunder in full in the ordinary course of business.

138. **Employee Compensation and Benefits.** All employment policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, Executory Contracts under the Plan and, on the Effective Date, shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.

139. **Employment Agreements.** Any Employment Agreement not assumed and assigned pursuant to the Sale Transactions Documents as part of the Sale Transactions shall be rejected by the Debtors on the Effective Date of the Plan.

140. **Distributions.** The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety. Except as otherwise set forth in the Plan or in this Confirmation Order, the timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan, the Plan Supplement, or this Confirmation Order, as applicable. To the extent the Plan does not specify the recipient of any Estate assets or property (including in the event that the Claim of the specified recipient of such Estate assets or property is paid or otherwise satisfied in full), such Estate assets or property shall be turned over to the Post-Effective Date Debtors or Plan Administrator for distribution to Holders of Claims in accordance with the claims and priority waterfall set forth in the Plan.

141.    **Professional Compensation.**  All requests for payment of Professional Compensation Claims (other than from OCPs) for services rendered and reimbursement of expenses incurred through the Effective Date shall be filed no later than forty-five (45) days after the Effective Date.  This Bankruptcy Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code.  Objections to Professional Compensation Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Compensation Claims.  To the extent any Cash is remaining in the Professional Fee Reserve Account following irrevocable payment in full of all Allowed Professional Compensation Claims (including Allowed Professional Compensation Claims arising after the Confirmation Date), such Cash shall be transferred to the Post-Effective Date Debtors.

142.    All requests for payment of Professional Compensation Claims of OCPs shall be made pursuant to the OCP Order.  To the extent any Professional Compensation Claims of the OCPs have not been Allowed pursuant to the OCP Order on or before the Effective Date, the amount of Professional Compensation Claims owing to the OCPs shall be paid in Cash to such OCPs by the Debtor, Post-Effective Date Debtors, or the Plan Administrator (as applicable) from the Professional Fee Reserve Account as soon as reasonably practicable after such Professional Compensation Claims are Allowed pursuant to the OCP Order.

143.    **Return of Deposits.**  All utilities, including, but not limited to, any Person or Entity that received a deposit or other form of adequate assurance of performance under section 366 of the Bankruptcy Code during these Chapter 11 Cases, must return such deposit or other form of adequate assurance of performance to the Plan Administrator promptly following the occurrence of the Effective Date, if not returned or applied earlier.

144.     **Compliance with Tax Requirements.**  In connection with the Plan, any Person issuing any instrument or making any distribution or payment in connection therewith, shall comply with all applicable withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  In the case of a non-Cash distribution that is subject to withholding, the distributing party may require the intended recipient of such distribution to provide the withholding agent with an amount of Cash sufficient to satisfy such withholding tax as a condition to receiving such distribution or withhold an appropriate portion of such distributed property and either (1) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax) or (2) pay the withholding tax using its own funds and retain such withheld property.  The distributing party shall have the right not to make a distribution under the Plan until its withholding or reporting obligation is satisfied pursuant to the preceding sentences.  Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.

145.     Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the withholding agent or such other Person designated by the Plan Administrator the appropriate IRS Form or other tax forms or documentation requested by the Plan Administrator to reduce or eliminate any required federal, state, or local withholding.  If the party entitled to receive such property as an issuance or distribution fails to comply with any such request for a one hundred eighty (180) day period beginning on the date after the date such request is made, the amount of such issuance or distribution shall irrevocably revert to the Plan Administrator and any Claim in respect of such distribution under the Plan shall be discharged and

forever barred from assertion against such Debtor, the Plan Administrator, or their respective property.

146.    Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Plan Distribution.

147.    **Procedures for Resolving Disputed Claims**. The procedures governing resolution of disputed or unliquidated claims contained in Article VII of the Plan shall be, and hereby are, approved in their entirety. As set forth therein, all Claims held by Persons or Entities against whom or which the Debtor has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims shall not be entitled to vote to accept or reject the Plan. A Claim deemed Disputed pursuant to Article VII.H of the Plan shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final Order and any sums due to the Debtors from such Holder have been paid.

148.    Except as provided herein, on or after the Effective Date, without the prior authorization of the Bankruptcy Court or the Plan Administrator, a Claim may not be Filed or amended and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

149.     If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until the Disputed Claim becomes an Allowed Claim.

150.     To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim. No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

151.     **Claims Register.**  Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the official Claims Register in these Chapter 11 Cases by the Debtors, or the Plan Administrator, as applicable, without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.  The Debtors' Notice and Solicitation Agent, is directed to adjust or expunge such Claims in the Claims Register, as applicable.

152.     **Waiver or Estoppel.**  Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, as an Other Secured Claim, or not subordinated, by virtue of an agreement made with the Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan, the Sale Orders, the Plan Supplement, the

Disclosure Statement, or other papers filed with the Bankruptcy Court or evidenced by a written instrument acknowledged by the Debtors or their counsel before the Confirmation Date.

153. **Debtor Releases, Third Party Release, Exculpations, Injunction, and Related Provisions under the Plan**. The discharge, releases, injunctions, exculpations, and related provisions set forth in Article IX of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Bankruptcy Court or any other party.

154. **Debtor Releases**.

155. **Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, and to the fullest extent permissible under applicable law, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, the Transferred Entities, the Post-Effective Date Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in Law, equity, contract, tort or otherwise, that the Debtors, the Transferred Entities, the Post-Effective Date Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf**

of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any Security of the Debtors, the Transferred Entities, or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or consummation of the RSA, the Restructuring Transactions, CareMed Pharmacy Sale Transaction, the Care Optical Sale Transaction, the DIP Facility, the DIP Facility Documents the administration and implementation of the Plan (including, for the avoidance of doubt, the Plan Supplement), the Disclosure Statement, the Sale Transactions, or any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or this Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the ACO Sale Transaction, the Core Centers Sale Transaction, CareMed Pharmacy Sale Transaction, the Care Optical Sale Transaction, the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, or any other Definitive Document, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of

Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date (including before the Petition Date). Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, this Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Sale Documents, or any Claim or obligation arising under the Plan.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtors' release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtors' release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtors' release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Post-Effective Date Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to Article IX.A of the Plan.

156. **Third Party Release.** Except as otherwise expressly set forth in this Plan or this Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date and to the fullest extent permissible under applicable law, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, asserted or unasserted, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, equity, contract, tort, or otherwise, including any derivative Claims asserted or assertable on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any Security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or consummation of the RSA, the Restructuring Transactions, the DIP Facility, the DIP Facility Documents the administration and implementation of the Plan (including, for the avoidance of doubt, the Plan Supplement), the Disclosure Statement, or the Sale Transactions, or any contract, instrument, release, or other agreement or document

(including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or this Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the ACO Sale Transaction, the Core Centers Sale Transaction, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date (including before the Petition Date); *provided further*, that the provisions of this Third Party Release shall not operate to waive, release, or otherwise impair any Causes of Action arising from willful misconduct, actual or criminal fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, this Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Sale Documents, or any Claim or obligation arising under the Plan. Notwithstanding anything to the contrary in the Plan, no person shall be released from any claims arising from or on account of professional malpractice in connection with rendering care or services to any patient.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the releases contained in Article IX.B of the Plan, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Releases are: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties that is important to the success of the Plan; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to Article IX.B of the Plan.

157.    **Exculpations.**  Except as otherwise specifically provided in the Plan or this Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any Claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the RSA and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, the ACO Sale Transaction, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or this Confirmation Order in lieu of such legal opinion) created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable Law, the Filing of the

Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

The Exculpated Parties and other parties set forth above have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

158. **Injunction.** Except as otherwise expressly provided in the Plan or this Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or this Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests or Causes of Action, as applicable, that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Plan Administrator, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests or Causes of Action, as

applicable; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests or Causes of Action, as applicable; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests or Causes of Action, as applicable; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests or Causes of Action, as applicable, unless such Holder has Filed a motion requesting the right to perform such setoff subrogation, or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or Cause of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff, subrogation, or recoupment pursuant to applicable Law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests or Causes of Action, as applicable, released or settled pursuant to the Plan.

For the avoidance of doubt, neither the Purchasers nor any Related Party of the Purchasers are or shall be deemed, as a result of the consummation of the Plan, the consummation of the Sale Transactions or otherwise, to be liable for any qui tam or similar Claim against any Debtor or Post-Effective Date Debtor, as applicable, due to conduct occurring prior to the closing of the Sale Transactions.

Upon entry of this Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct

and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Except as otherwise set forth in this Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Restructuring Term Sheet and the Plan.

159. **Gatekeeper Provision.** Except as provided in paragraphs 133 and 197 of this order, no party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a Cause of Action of any kind against the Debtors, the Plan Administrator, the Exculpated Parties, or the Released Parties, including without limitation, for the avoidance of doubt, the Purchasers, that relates to, or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, a Cause of Action subject to Article IX.A, Article IX.B, Article IX.C or Article IX.D without first (a) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Cause of Action represents a colorable Claim against a Debtor, Plan Administrator, Exculpated Party, or Released Party and is not a Claim that has been released or discharged under the Plan or has been enjoined by an injunction provided for in the Plan, which request must attach the complaint or petition proposed to be Filed by the requesting party and (b) obtaining from the Bankruptcy Court specific authorization for such party to bring such Cause of Action against any such Debtor, Plan Administrator, Exculpated Party, or Released Party, including without limitation, for the avoidance of doubt, the Purchasers. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Causes of Action not explicitly included in the authorized complaint or petition must obtain

authorization from the Bankruptcy Court before Filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Cause of Action is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Cause of Action. For the avoidance of doubt, no party shall be a Releasing Party to the extent that such party did not receive notice and service of the Release Opt-Out.

160. **Release of Liens**. Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security Interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and Interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security Interests shall revert to the Debtors and their successors and assigns.[6] For the avoidance of doubt, on the Effective Date, (a) concurrently with the consummation of the ACO Sale Transaction, the Purchased Securities (as defined in the ACO SPA), shall be transferred to and vest in the ACO Purchaser free and clear of all Liens, Claims, charges, Interests, or other encumbrances pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code and in accordance with the terms of this Confirmation Order, the Plan, and the ACO Sale Documents, each as applicable; (b) concurrently with the consummation of the Core Centers Sale Transaction, the Core Centers Acquired Assets shall be transferred to and vest in the Core Centers Purchaser free and clear of all Liens, Claims, charges, Interests, or other encumbrances pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code and in accordance with the terms of this Confirmation Order, the Plan, and the Core Centers Sale

---

[6] For the avoidance of doubt, any cash sweep agreements or deposit account control agreements, and any agreements related thereto, to which the ACO Entities are party, are hereby terminated.

Documents, each as applicable; (c) concurrently with the consummation of the CareMed Pharmacy Sale Transaction, the CareMed Pharmacy Acquired Assets shall be transferred to and vest in the CareMed Pharmacy Purchaser free and clear of all Liens, Claims, charges, Interests, or other encumbrances pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code and in accordance with the terms of this Confirmation Order, the Plan, and the CareMed Pharmacy Documents, each as applicable; (d) concurrently with the consummation of the Care Optical Sale Transaction, the Care Optical Acquired Assets shall be transferred to and vest in the Care Optical Purchaser free and clear of all Liens, Claims, charges, Interests, or other encumbrances pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code and in accordance with the terms of this Confirmation Order, the Plan, and the Care Optical Documents, each as applicable, and (e) concurrently with the consummation of the Clear Scripts Sale Transaction, the Clear Scripts Acquired Assets shall be transferred to and vest in the Clear Scripts Purchaser free and clear of all Liens, Claims, charges, Interests, or other encumbrances pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code and in accordance with the terms of this Confirmation Order, the Plan, and the Clear Scripts Sale Documents, each as applicable.

161. Neither the Core Centers Purchaser nor any of its Affiliates does or shall have any successor liability relating to any pre-Closing activities of the Seller Parent or any of its Affiliates (including each Member of the Seller Group) including, without limitation, under any theory of successor liability on account of any claims or interests that encumber or relate to the Core Centers Assets. The consummation of the Core Centers Sale Transaction does not amount to a consolidation, merger or de facto merger of the Core Centers Purchaser and the Debtors and/or their estates. No substantial continuity exists between the Core Centers Purchaser and the Debtors.

No continuity of enterprise exists between the Debtors and the Core Centers Purchaser, the Core Centers Purchaser is not a mere continuation of the Debtors or their estate, and the Core Centers Purchaser does not constitute a successor to the Debtor or their estates. Upon the Closing, to the fullest extent of the law, the Core Centers Purchaser's acquisition of the Core Centers Assets shall be Free and Clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the time of the Closing. The Core Centers Assets shall not be subject to any Claims and Interests arising under or in connection with any Excluded Contract, Excluded Asset, or Excluded Liability. The Core Centers Purchaser's operations shall not be deemed a continuation of the Debtor' business as a result of the acquisition of the Core Centers Assets. The transfer of the Core Centers Assets to the Core Centers Purchaser, except as otherwise set forth in the Core Centers APA, does not, and will not, subject the Core Centers Purchaser to any liability whatsoever, including but not limited to any liability related to claims of medical malpractice and/or other professional liability of the Debtors, or any of their employees, attending physicians, agents or independent contractors to the extent arising out of events or omissions occurring before the Closing Date with respect to operation of the Debtors' business prior to the Closing.

162.    If any Holder of an Other Secured Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security Interests to secure such Holder's Other Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Plan Administrator that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security Interests, including the making of any applicable filings or recordings, and the Plan Administrator shall be entitled to make any such filings or recordings on such Holder's behalf.

163.    **ACO Sale Transaction.** The ACO Sale Transaction, and all other ancillary documents entered into or delivered in connection therewith, and all of the terms and conditions thereof, are hereby approved in all respects. The Debtors and the ACO Purchaser are hereby authorized to perform their respective covenants and undertakings as provided in the ACO SPA without further order of the Court.  The ACO Purchaser and the Debtors shall have no obligation to close the ACO Sale Transaction except as is contemplated and provided for in the ACO SPA. The ACO Purchaser may operate free of any restrictions of the Bankruptcy Code.

164.    **Good Faith Purchaser.** The ACO SPA has been entered into by the ACO Purchaser in good faith and the ACO Purchaser is a good faith purchaser of the Purchased Securities as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization of the ACO Sale Transaction provided herein shall neither affect the validity of ACO Sale Transaction nor the transfer of the Purchased Securities to ACO Purchaser, free and clear, unless such authorization is duly stayed before the Closing pending such appeal.  The ACO Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code, and the ACO Purchaser otherwise has proceeded in good faith in all respects in connection with the ACO Sale Transaction specifically and these Chapter 11 Cases generally.

165.    **ACO Purchaser Release.** The ACO Purchaser has given substantial consideration under the ACO SPA, which consideration constitutes valid, valuable, and sufficient consideration for the absolution from any potential claims of successor liability of the ACO Purchaser to the greatest extent allowed by applicable law. Except as otherwise expressly provided in the ACO SPA, the Plan, or this Confirmation Order, neither the ACO Purchaser, nor any of its Affiliates, shall be liable for any claims against or in the assets purchased under the ACO SPA, including the

Purchased Securities, or against the Debtors or any of their predecessors or Affiliates, and the ACO Purchaser and its Affiliates shall have no successor, transferee, derivative, or vicarious liabilities of any kind or character, including any theory of antitrust, environmental, successor, or transfer liability, labor law, de facto merger, mere continuation, or substantial continuation, whether known or unknown as of the closing of the ACO Sale Transaction, then existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Debtors or their Affiliates or any obligations of the Debtors or their Affiliates arising prior to the closing of the ACO Sale Transaction, including, but not limited to, obligations on account of: (a) any foreign, federal, state, or local revenue, pension, ERISA (as defined below), tax (including, without limitation, taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Securities prior to the closing of the Sale Transaction), labor, employment, antitrust, environmental, or other law, rule, or regulation (including without limitation filing requirements under any such laws, rules, or regulations); (b) any products liability law, rule, regulation, or doctrine with respect to any Debtor's liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (c) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which any Debtor is a party; (d) any pension, welfare, compensation, or other benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of any Debtor; (e) the cessation of any Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to (i) the Employee Retirement Income Security Act of 1974 ("ERISA"), (ii) the Internal Revenue Code, (iii) the Fair Labor Standards Act, (iv) Title

VII of the Civil Rights Act of 1964, (v) the Federal Rehabilitation Act of 1973, (vi) the National Labor Relations Act, (vii) the Age Discrimination and Employment Act of 1967, (viii) the Americans with Disabilities Act of 1990, or (ix) Section 4980B of the Internal Revenue Code and Part 6 of Title I of ERISA ("COBRA"); (f) environmental liabilities, debts, claims, or obligations arising from conditions first existing on or prior to the closing of the ACO Sale Transaction (including, without limitation, the presence of hazardous, toxic, polluting, or contamination substances or wastes, or any per- and polyfluoroalkyl substances liabilities), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.; (g) any liabilities, debts, or obligations of or required to be paid by any Debtor for any taxes of any kind for any period; (h) any liabilities, debts, commitments, or obligations for any taxes relating to the operation of the applicable assets purchased under the ACO SPA prior to the closing of the ACO Sale Transaction; (i) any bulk sale law; (j) any litigation or threatened litigation; or (k) any liabilities on account of warranties, intercompany loans, or receivables among Debtors and their affiliates. The operations of the ACO Purchaser and its affiliates shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Purchased Securities. In addition, the ACO Purchaser and its Affiliates shall have no successor liability under COBRA for any individual who is an "M&A qualified beneficiary" as defined in Treasury Regulations Section 54.4980B-9 in connection with the Purchased Securities.

166.    The ACO Purchaser shall not be, or become, a defendant in any litigation referenced in the preceding paragraph or participate in such litigation. Any litigation existing between the Debtors or their Affiliates and any third party shall be resolved between the Debtors or their Affiliates, as applicable, and such third party, without the involvement of the ACO Purchaser, and in no circumstances shall any third party have recourse against the ACO Purchaser

pursuant to such litigation. For the avoidance of doubt, this expressly includes, without limitation, any and all pending litigation by and between any Debtor or Affiliate and (a) any current or future PFAS litigant from injuries causes prior to the Closing Date and (b) the Department of Justice or other governmental entities.

167. Except with respect to the Assumed Liabilities (as defined in the ACO SPA), all persons and entities, including, but not limited to, all debt holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants (including, without limitation, any litigation claimants relating to PFAS), and other creditors, holding Liens, Liabilities, or other interests of any kind or nature whatsoever against or in all or any portion of the Purchased Securities (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Securities, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Purchased Securities to the ACO Purchaser in accordance with the ACO SPA, are hereby forever barred, estopped, and permanently enjoined from asserting against the ACO Purchaser, its successors or assigns, its property or the Purchased Securities, such persons' or entities' Liens or Liabilities on or against the Purchased Securities, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the ACO Purchaser, its successors, assets, or properties; (b) enforcing, attaching, collecting, or recovering, in any manner, any judgment, award, decree, or order against the ACO Purchaser, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Lien, Liability, claim, or interest against the ACO Purchaser, its successors, their assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due

to the ACO Purchaser or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Securities or conduct any of the businesses operated with the Purchased Securities.

168. To the greatest extent available under applicable law, the ACO Purchaser is authorized, as of the Closing Date (as defined in the ACO SPA), to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Securities to the extent transferred in the ACO SPA, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the ACO Purchaser as of the Closing Date. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Securities sold, transferred, assigned, or conveyed to the ACO Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the ACO Sale Transaction.

169. **Title to the Purchased Securities**. Upon closing of the ACO Sale Transaction, this Order shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Debtors' right, title, and interest in all of the Purchased Securities (and any related assets as set forth in the ACO SPA) and a bill of sale transferring good, marketable, and valid title in such Purchased Securities (and related assets) to the ACO Purchaser pursuant to the terms of the ACO SPA on a free and clear basis.

170. **Adequate Notice**. The Plan shall be conclusively deemed to be adequate notice that any Lien, Claim, encumbrance, or other interest on the Purchased Securities is being extinguished. Any Person having a Lien, Claim, encumbrance, or other interest against any Purchased Securities (or assets being transferred pursuant to the ACO SPA) shall be conclusively deemed to have consented to the transfer, assignment and vesting of such Purchased Securities free and clear to the ACO Purchaser.

171. **Governmental Authorization to Effectuate Transaction**. Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the transactions contemplated by the ACO Sale Transaction. No governmental unit may revoke or suspend any lawful right, license, trademark or other permission relating to the use of the Purchased Securities sold, transferred or conveyed to the ACO Purchaser on account of the filing or pendency of this Chapter 11 Case or the consummation of the ACO Sale Transaction. For the avoidance of doubt, the ACO Sale Transaction authorized herein shall be of full force and effect, regardless of whether the Debtors or any of its affiliates lack good standing in any jurisdiction in which such entity is formed or is authorized to transact business.

172. **References to ACO SPA**. The failure specifically to include or reference any particular provision of the ACO SPA or any related ancillary document in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the ACO SPA and all related ancillary documents by authorized and approved, each in its entirety and such related agreements be approved and effectuated in their entirety (except as otherwise modified in this Order).

173.	**Automatic Stay**. The ACO Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the ACO SPA or any other sale-related document.

174.	The ACO Purchaser has given substantial and fair consideration under the ACO Sale Transaction for the benefit of the Debtors, their estates, and their creditors. The consideration given by ACO Purchaser shall constitute valid and valuable consideration for the releases of any potential Liens or encumbrances pursuant to this Order, which releases shall be deemed to have been given in favor of the ACO Purchaser by all holders of Liens or encumbrances against or interests in, or claims against, any of the Debtors or any of the assets subject to the ACO SPA, other than with respect to the Assumed Liabilities and Permitted Liens (each as defined in the ACO SPA). The consideration provided by the ACO Purchaser for the ACO Sale Transaction is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

175.	**CareMed Pharmacy and Clear Scripts Sale Transactions.** The CareMed Pharmacy and Clear Scripts Sale Transactions, and all other ancillary documents entered into or delivered in connection therewith, and all of the terms and conditions thereof, are hereby approved in all respects. The Debtors and the CareMed Pharmacy and Clear Scripts Sale Purchasers are hereby authorized to perform their respective covenants and undertakings as provided in the CareMed Pharmacy SPA and the Clear Scripts SPA without further order of the Court. The CareMed Pharmacy and Clear Scripts Sale Purchasers and the Debtors shall have no obligation to close the CareMed Pharmacy and Clear Scripts Sale Transactions except as is contemplated and provided for in the CareMed Pharmacy SPA and Clear Scripts SPA.

176.	**Good Faith Purchaser.** The CareMed Pharmacy SPA and Clear Scripts SPA have been entered into by the each purchaser in good faith and the CareMed Pharmacy Purchaser and

Clear Scripts Purchaser are good faith purchasers of the Purchased Securities as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization of the CareMed Pharmacy Sale Transaction and/or the Clear Scripts Sale Transaction provided herein shall neither affect the validity of any respective Sale Transaction nor the transfer of the Purchased Securities to CareMed Pharmacy Purchaser and/or Clear Scripts Sale Purchaser, free and clear, unless such authorization is duly stayed before the Closing pending such appeal. Each Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code, and the each Purchaser otherwise has proceeded in good faith in all respects in connection with the CareMed Pharmacy Sale Transaction and/or the Clear Scripts Transaction specifically and these Chapter 11 Cases generally.

177. **The CareMed Pharmacy and Clear Scripts Purchaser Release.** The CareMed Pharmacy and Clear Scripts Purchasers have given substantial consideration under the CareMed Pharmacy SPA and the Clear Scripts SPA, which consideration constitutes valid, valuable, and sufficient consideration for the absolution from any potential claims of successor liability of the The CareMed Pharmacy and Clear Scripts Purchasers to the greatest extent allowed by applicable law. Except as otherwise expressly provided in the CareMed Pharmacy SPA, the Clear Scripts SPA, the Plan, or this Confirmation Order, neither the CareMed Pharmacy nor Clear Scripts Purchasers, nor any of their Affiliates, shall be liable for any claims against or in the assets purchased under the CareMed Pharmacy SPA or the Clear Scripts SPA, including the Purchased Securities, or against the Debtors or any of their predecessors or Affiliates, and the The CareMed Pharmacy and Clear Scripts Purchasers and their Affiliates shall have no successor, transferee, derivative, or vicarious liabilities of any kind or character, including any theory of antitrust, environmental, successor, or transfer liability, labor law, de facto merger, mere continuation, or

substantial continuation, whether known or unknown as of the closing of the CareMed Pharmacy and Clear Scripts Sale Transactions, then existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Debtors or their Affiliates or any obligations of the Debtors or their Affiliates arising prior to the closing of the CareMed Pharmacy or Clear Scripts Sale Transactions, including, but not limited to, obligations on account of: (a) any foreign, federal, state, or local revenue, pension, ERISA (as defined below), tax (including, without limitation, taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Securities prior to the closing of the Sale Transactions), labor, employment, antitrust, environmental, or other law, rule, or regulation (including without limitation filing requirements under any such laws, rules, or regulations); (b) any products liability law, rule, regulation, or doctrine with respect to any Debtor's liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (c) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which any Debtor is a party; (d) any pension, welfare, compensation, or other benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of any Debtor; (e) the cessation of any Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to (i) the Employee Retirement Income Security Act of 1974 ("ERISA"), (ii) the Internal Revenue Code, (iii) the Fair Labor Standards Act, (iv) Title VII of the Civil Rights Act of 1964, (v) the Federal Rehabilitation Act of 1973, (vi) the National Labor Relations Act, (vii) the Age Discrimination and Employment Act of 1967, (viii) the Americans with Disabilities Act of 1990, or (ix) Section 4980B of the Internal Revenue Code and Part 6 of Title

I of ERISA ("COBRA"); (f) environmental liabilities, debts, claims, or obligations arising from conditions first existing on or prior to the closing of the CareMed Pharmacy and Clear Scripts Sale Transactions (including, without limitation, the presence of hazardous, toxic, polluting, or contamination substances or wastes, or any per- and polyfluoroalkyl substances liabilities), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.; (g) any liabilities, debts, or obligations of or required to be paid by any Debtor for any taxes of any kind for any period; (h) any liabilities, debts, commitments, or obligations for any taxes relating to the operation of the applicable assets purchased under the CareMed Pharmacy SPA or Clear Scripts SPA prior to the closing of the CareMed Pharmacy and Clear Scripts Sale Transactions; (i) any bulk sale law; (j) any litigation or threatened litigation; or (k) any liabilities on account of warranties, intercompany loans, or receivables among Debtors and their affiliates. The operations of the CareMed Pharmacy and Clear Scripts Purchasers and their affiliates shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Purchased Securities. In addition, the CareMed Pharmacy and Clear Scripts Purchasers and their Affiliates shall have no successor liability under COBRA for any individual who is an "M&A qualified beneficiary" as defined in Treasury Regulations Section 54.4980B-9 in connection with the Purchased Securities.

178.     The CareMed Pharmacy and Clear Scripts Purchasers shall not be, or become, a defendant in any litigation referenced in the preceding paragraph or participate in such litigation. Any litigation existing between the Debtors or their Affiliates and any third party shall be resolved between the Debtors or their Affiliates, as applicable, and such third party, without the involvement of the CareMed Pharmacy Purchaser or Clear Scripts Purchaser, and in no circumstances shall any

third party have recourse against the CareMed Pharmacy Purchaser or Clear Scripts Purchaser pursuant to such litigation.

179. Except with respect to the Assumed Liabilities (as defined in the CareMed Pharmacy SPA or Clear Scripts SPA), all persons and entities, including, but not limited to, all debt holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Liens, Liabilities, or other interests of any kind or nature whatsoever against or in all or any portion of the Purchased Securities (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Securities, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Purchased Securities to the CareMed Pharmacy Purchaser or Clear Scripts Purchaser in accordance with the CareMed Pharmacy SPA and/or the Clear Scripts SPA, are hereby forever barred, estopped, and permanently enjoined from asserting against the CareMed Pharmacy Purchaser or Clear Scripts Purchaser, its successors or assigns, its property or the Purchased Securities, such persons' or entities' Liens or Liabilities on or against the Purchased Securities, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the CareMed Pharmacy Purchaser or Clear Scripts Purchaser, its successors, assets, or properties; (b) enforcing, attaching, collecting, or recovering, in any manner, any judgment, award, decree, or order against the CareMed Pharmacy Purchaser or Clear Scripts Purchaser, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Lien, Liability, claim, or interest against the CareMed Pharmacy Purchaser or Clear Scripts Purchaser, its successors, their assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due

to the CareMed Pharmacy Purchaser or Clear Scripts Purchaser or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Securities or conduct any of the businesses operated with the Purchased Securities.

180. To the greatest extent available under applicable law, the CareMed Pharmacy Purchaser or Clear Scripts Purchaser is authorized, as of the Closing Date (as defined in the CareMed Pharmacy SPA and/or the Clear Scripts SPA), to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Securities to the extent transferred in the CareMed Pharmacy SPA and/or the Clear Scripts SPA, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the CareMed Pharmacy Purchaser or Clear Scripts Purchaser as of the Closing Date. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Securities sold, transferred, assigned, or conveyed to the CareMed Pharmacy Purchaser or Clear Scripts Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the CareMed Pharmacy or Clear Scripts Sale Transactions.

181. **Title to the Purchased Securities**. Upon closing of the CareMed Pharmacy Sale Transaction and/or the Clear Scripts Sale Transaction, this Order shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Debtors' right, title, and interest in all of the Purchased Securities (and any related assets as set forth in the

CareMed Pharmacy SPA and/or the Clear Scripts SPA) and a bill of sale transferring good, marketable, and valid title in such Purchased Securities (and related assets) to the CareMed Pharmacy Purchaser or Clear Scripts Purchaser pursuant to the terms of the CareMed Pharmacy SPA and/or the Clear Scripts SPA on a free and clear basis.

182. **Adequate Notice**. The Plan shall be conclusively deemed to be adequate notice that any Lien, Claim, encumbrance, or other interest on the Purchased Securities is being extinguished. Any Person having a Lien, Claim, encumbrance, or other interest against any Purchased Securities (or assets being transferred pursuant to the CareMed Pharmacy SPA and/or the Clear Scripts SPA) shall be conclusively deemed to have consented to the transfer, assignment and vesting of such Purchased Securities free and clear to the CareMed Pharmacy and/or Clear Scripts Purchaser.

183. **Governmental Authorization to Effectuate Transaction**. Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the transactions contemplated by the CareMed Pharmacy and Clear Scripts Sale Transactions. No governmental unit may revoke or suspend any lawful right, license, trademark or other permission relating to the use of the Purchased Securities sold, transferred or conveyed to the ACO Purchaser on account of the filing or pendency of this Chapter 11 Case or the consummation of the CareMed Pharmacy and/or Clear Scripts Sale Transactions. For the avoidance of doubt, the CareMed Pharmacy and Clear Scripts Sale Transactions authorized herein shall be of full force and effect, regardless of whether the Debtors or any of its affiliates lack good standing in any jurisdiction in which such entity is formed or is authorized to transact business.

184. **References to CareMed Pharmacy SPA and/or the Clear Scripts SPA**. The failure specifically to include or reference any particular provision of the CareMed Pharmacy SPA and/or the Clear Scripts SPA or any related ancillary document in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the CareMed Pharmacy SPA and/or the Clear Scripts SPA and all related ancillary documents by authorized and approved, each in its entirety and such related agreements be approved and effectuated in their entirety (except as otherwise modified in this Order).

185. **Automatic Stay**. The CareMed Pharmacy Purchaser and/or the Clear Scripts Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the CareMed Pharmacy SPA and/or the Clear Scripts SPA or any other sale-related document.

186. The CareMed Pharmacy Purchaser and/or the Clear Scripts Purchaser has given substantial and fair consideration under the Transaction for the benefit of the Debtors, their estates, and their creditors. The consideration given by CareMed Pharmacy Purchaser and/or the Clear Scripts Purchaser shall constitute valid and valuable consideration for the releases of any potential Liens or encumbrances pursuant to this Order, which releases shall be deemed to have been given in favor of the CareMed Pharmacy Purchaser and/or the Clear Scripts Purchaser by all holders of Liens or encumbrances against or interests in, or claims against, any of the Debtors or any of the assets subject to the CareMed Pharmacy SPA and/or the Clear Scripts SPA, other than with respect to the Assumed Liabilities and Permitted Liens (each as defined in the CareMed Pharmacy SPA and/or the Clear Scripts SPA).

187.     The consideration provided by the CareMed Pharmacy Purchaser and/or the Clear Scripts Purchaser for the CareMed Pharmacy and Clear Scripts Sale Transactions is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

188.     **Term of Injunctions or Stays.**  Except as otherwise provided in the Plan, to the maximum extent permitted by applicable Law and subject to the Bankruptcy Court's post-Confirmation jurisdiction to modify the injunctions and stays under the Plan: (1) all injunctions with respect to or stays against an action against property of the Debtors or the Debtors' Estates arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date this Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Debtors' Estates; and (2) all other injunctions and stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (i) the date that the Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court, or (ii) the date that the Chapter 11 Cases are dismissed pursuant to a Final Order of the Bankruptcy Court.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect indefinitely.

189.     **Nonseverability of Plan Provisions.**  If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of

the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

190.     This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Plan Administrator (as applicable); and (3) nonseverable and mutually dependent.

191.     **Notice of Subsequent Pleadings.**  Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date is required to be served upon only the following parties: (a) the U.S. Trustee; (b) the Required Consenting Term Loan Lenders; (c) any party known to be directly affected by the relief sought by such pleadings; and (d) any party that specifically requests additional notice after the Effective Date in writing to the Debtors or the Plan Administrator, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date.  The Debtors' Notice and Solicitation Agent shall not be required to file updated service lists.

192.     **Post-Confirmation Reports.**  After entry of this Confirmation Order, each of the Debtors and the Plan Administrator, as applicable, shall remain obligated to file post-confirmation quarterly reports and to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to File a Proof of Claim or any other request for payment of quarterly fees.

193.     **Post-Confirmation Modifications.**  Following the entry of this Confirmation Order, the Debtors or the Plan Administrator may, upon order of the Bankruptcy Court, amend or

modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

194. **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

195. **Applicable Non-Bankruptcy Law.** The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law or any requirements related thereto.

196. **Government Approvals Not Required.** This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

197. Except as otherwise expressly provided in paragraph 161 herein, nothing in the Plan Documents shall effect or be interpreted to effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without

limitation any claim arising under the Internal Revenue Code, the securities laws, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the securities laws, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the securities laws, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person. Nothing in the Plan Documents shall divest any court, commission, or tribunal of jurisdiction from resolving any matters relating to the liabilities or claims set forth in this paragraph. All claims and liabilities in this paragraph are not subject to Article IX. A-D of the Plan.  For the avoidance of doubt, this paragraph shall not be construed to conflict with the rights or obligations of the Core Centers Purchaser under the Core Centers APA or of the ACO Purchaser under the ACO SPA

198.    **Provisions Related to Elevance and Humana**. Notwithstanding anything herein to the contrary, nothing contained in this Order shall extinguish, impair, or otherwise affect any defenses of (a) Elevance Health Companies, Inc. and its affiliates, including, without limitation, Anthem, Inc.; Community Insurance Company d/b/a Anthem Blue Cross Blue Shield; Blue Cross of California; Empire Blue Cross Blue Shield; HealthSun Health Plans, Inc.; Simply Healthcare Plans, Inc.; Freedom Health, Inc.; Optimum Healthcare, Inc.; Sellcore; and WellPoint, Inc. f/k/a

Amerigroup Texas, Inc. d/b/a Amerigroup Community Care (together, "Elevance") or (b) Humana, Humana Medical Plan Inc., Humana Government Business, Health Value Management, Inc. DBA ChoiceCare Network, CarePlus Health Plans, Inc. and their affiliates that underwrite or administer health plans (collectively, the "Humana Entities") to any claim or right of payment asserted by Debtors or the Purchaser(s) to the extent validly enforceable against the applicable Debtors or (solely to the extent accruing post-Closing) against the applicable Purchaser(s), including any applicable defense of recoupment or setoff; *provided, however*, that other than with respect to any preserved rights pursuant to any Cure Objection as provided herein or Elevance or the Humana Entities' proofs of claim, this paragraph shall not preserve any applicable affirmative right of recovery or claim of Elevance or the Humana Entities against Debtors or Purchaser(s) and this paragraph shall not extinguish, impair, or otherwise affect any applicable defense or response that the Debtors or Purchaser(s) may have.

199. **Provisions Related to Cigna**.  Notwithstanding anything in this Order or any notice related thereto to the contrary, the Cigna Contract (as defined in the *Objection of Cigna to Notice of Cure Amounts and Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale Transaction* [Docket No. 365] (the "Cigna Objection")) shall not be assumed and assigned pursuant to this Order, and the Cigna Objection is hereby adjourned. If the Debtors and the Buyer seek to have the Cigna Contract assumed and assigned as part of the Core Centers Sale Transaction under this Order, assumption, assignment and cure shall be resolved by agreement among Cigna (as defined in the Cigna Objection), the Debtors, and the Buyer without further order of the Court or, if no agreement can be reached, by further order of the Court.

200. **Provisions Related to Atlantic Specialty Insurance Company ("ASIC")**. ASIC has issued surety bonds (the "ASIC Surety Bonds" and each individually, an "ASIC Surety Bond")

on behalf of the one or more Debtors. On January 23, 2023, certain Debtors entered into, or are potentially otherwise liable under, a *General Indemnity Agreement* and/or related agreements with ASIC (collectively, the "ASIC Indemnity Agreement"); *provided* that for the avoidance of doubt neither the Core Centers Assets nor the ACO Transferred Assets shall not be subject to a lien, claim, encumbrance, or other interest in favor of ASIC.

201.    Nothing in this Confirmation Order, the Plan, or any sale transaction authorized by the Plan, shall be deemed to be a sale, transfer, assumption or assumption and assignment of any ASIC Surety Bond or the Indemnity Agreement, or any documents or rights related to any ASIC Surety Bond or the ASIC Indemnity Agreement, including collateral agreements.

202.    All collateral, on which ASIC has a perfected security interest as of the Petition Date, including cash collateral, and all collateral agreements and proceeds therefrom issued to ASIC as security for any Debtors' obligations under the ASIC Surety Bonds and ASIC Indemnity Agreement (collectively, the "Existing ASIC Collateral") shall remain in place to secure all payment and/or performance obligations under the ASIC Surety Bonds or for obligations arising under the ASIC Indemnity Agreement. Nothing in this Confirmation Order or the Plan shall be deemed to apply to the ASIC's claims or rights to pursue the Existing ASIC Collateral, nor shall these provisions be interpreted to bar, impair, prevent or otherwise limit ASIC from exercising its valid rights under or with respect to any of the ASIC Surety Bonds, the ASIC Indemnity Agreement, or any related agreements or applicable law, including the common law of suretyship. For the avoidance of doubt, ASIC may apply any and all of ASIC Collateral for all losses and expenses in accordance with the ASIC Indemnity and applicable law without further order of the Court or consent from Debtors; *provided* that neither the ACO Transferred Assets nor the Core

Centers Acquired Assets shall not be subject to a lien, claim, encumbrance, or other interest in favor of ASIC.

203.    Nothing herein shall be deemed to provide ASIC's consent to the involuntary substitution of any principal under any ASIC Surety Bond.

204.    Nothing in this Confirmation Order or the Plan shall be interpreted to alter, diminish or enlarge the rights or obligations of ASIC in regard to state and federal agencies, third parties or otherwise under any surety bonds, any indemnity agreements or applicable law nor shall any of the foregoing be deemed to enjoin ASIC from asserting any rights, claims or defenses, in regard to or against any state and federal agencies, third parties including, without limitation, any of ASIC indemnitors, insurers, or otherwise under any surety bonds, any indemnity agreements or applicable law.

205.    Upon the release of all ASIC Surety Bonds and upon full satisfaction or reimbursement of all losses and expenses to ASIC incurred under the ASIC Surety Bonds, the ASIC Indemnity Agreement, including satisfaction or reimbursement from any Existing ASIC Collateral, shall return any remaining Existing ASIC Collateral to:  Plan Administrator. Notwithstanding anything herein to the contrary, ASIC, the Debtors, the Wind-Down Debtors, and/or the Plan Administrator, as applicable, shall work in good faith with all other necessary third parties, including CMS, to evaluate potential defenses to bond claims, obtain the requisite releases of all ASIC Surety Bonds, satisfy or reimburse any losses and expenses to ASCI incurred under the ASIC Surety Bonds, and return any remaining Existing ASIC Collateral as promptly as possible.

206.    **Provisions Related to Broward County Tax Collector**. Notwithstanding any other language in this order, the Broward County Tax Collector ("Tax Collector") shall retain her

statutory tax liens on the applicable property of the Debtors relating to 2025 personal property taxes until 2025 taxes are paid in full. In addition, the Debtors shall retain from the proceeds, in a segregated account, $15,644.23, for the Tax Collector's benefit to cover estimated 2025 personal property taxes, and the Debtors shall file tangible personal property tax returns to the Broward County Property Appraiser in the timeframe provided by Florida law. The Debtors shall not release these funds for any other purpose without the consent of the Tax Collector or order of the Court, after notice to the Tax Collector. Neither the Core Centers Purchaser, the Core Centers Acquired Assets, the ACO Purchaser, nor the ACO Transferred Assets will be liable or subject to any liens, claims, encumbrances, or other interests of the Broward County Tax Collector.

207. **Reporting.** After entry of this Confirmation Order, the Debtors, or the Plan Administrator, as applicable, shall have no obligation to file with the Bankruptcy Court, serve on any parties, or otherwise provide any party with any other report that the Debtors were obligated to provide under the Bankruptcy Code or an order of the Bankruptcy Court, including obligations to provide (a) any reports to any parties otherwise required under the "first" and "second" day orders entered in these Chapter 11 Cases and (b) monthly operating reports (even for those periods for which a monthly operating report was not filed before the Effective Date); *provided* that the Debtors or Plan Administrator, as applicable, will comply with the U.S. Trustee's quarterly reporting requirements.

208. **Notice of Effective Date.** The Debtors or the Plan Administrator, as applicable, shall serve notice of entry of this Confirmation Order, of the occurrence of the Effective Date, and of applicable deadlines (the "Notice of Effective Date") in accordance with Bankruptcy Rules 2002 and 3020(c) on all parties served with notice of the Combined Hearing within seven (7) Business Days after the Effective Date; *provided* that no notice of any kind shall be required to be mailed

or made upon any Entity to whom the Debtors mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

209.    The Notice of Effective Date will have the effect of an order of the Bankruptcy Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law. The above-referenced notices are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

210.    **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

211.    **Dissolution of the Committees.** On the Effective Date, any duly appointed Statutory Committee will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to these Chapter 11 Cases.

212.    **Effect of Conflict.** This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

213.    **Conflicts between Asset Purchase Agreement and Plan or Order**. Nothing in the Plan, this Order, or any other order entered in this Case (including any order entered after any

conversion of the chapter 11 case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the ACO SPA or Core Centers APA. To the extent the terms and provisions of the Plan or this Order conflict with the terms and provisions of the ACO SPA or Core Centers APA, the ACO SPA or Core Centers APA, respectively, shall govern. Nothing in the Plan or this Order shall (a) create any obligation of the ACO Purchaser or Core Centers Purchaser that conflicts with the obligations contained in the ACO SPA or Core Centers APA; or (b) affect, impair, limit or expand the specific rights and obligations set forth in the ACO SPA or Core Centers APA. Notwithstanding the foregoing, paragraphs 132, 133, and 197 of this Order shall not be deemed to conflict with the ACO SPA or the Core Centers APA.

214. **Provisions Regarding Releases.** Nothing set forth in the Plan, including, without limitation, Article IX.A or Article IX.B of the Plan, shall be construed as or deemed to constitute a release of any obligations of the Debtors or any Released Parties under any Sale Order, including any Asset Purchase Agreement or ancillary document related thereto, regardless of when such obligations arise.

215. **Final Order.** For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court. This Confirmation Order is a Final Order and shall be effective and enforceable immediately upon entry, and its provisions shall be self-executing.

216. **Retention of Jurisdiction.** The Bankruptcy Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article X of the Plan and section 1142 of the Bankruptcy Code.

**### END OF ORDER ###**

Order submitted By:

SIDLEY AUSTIN LLP
Thomas R. Califano (24122825)
Juliana L. Hoffman (24106103)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:     (214) 981-3400
Email:         tom.califano@sidley.com
               jhoffman@sidley.com


SIDLEY AUSTIN LLP
Stephen Hessler (*pro hac vice* pending)
Anthony R. Grossi (*pro hac vice* pending)
Jason L. Hufendick (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 839-5300
Facsimile:     (212) 839-5599
Email:         shessler@sidley.com
               agrossi@sidley.com
               jhufendick@sidley.com

*Attorneys for the Debtors and Debtors in Possession*

## Exhibit A

**Plan**

[*Filed at Docket No. 574-1*]